**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| DAVID ROY,<br>*Plaintiff* | : | |
| v. | : | C.A. No. 07- |
| GENERAL ELECTRIC COMPANY,<br>UBS FINANCIAL SERVICES, INC., f/k/a<br>UBS PAINE WEBBER, INC.,<br>And various John and Jane Does,<br>Alias, and John Doe Corporations,<br>Alias,<br>*Defendants* | : | CA 07 107 S<br><br>Jury Trial Demanded |

**Complaint**

Now comes Plaintiff and hereby files the following complaint against Defendants:

**Parties and Jurisdiction**

1. Plaintiff is a resident of the State of Rhode Island and currently lives in Saunderstown, Rhode Island.

2. Defendant General Electric Company ("GE") is a foreign corporation organized and existing under the laws of the State of New York and is registered as a foreign business corporation with the Rhode Island Secretary of State.

3. Defendant UBS Financial Services, Inc., formerly known as UBS Paine Webber, Inc., ("UBS") is a foreign corporation organized and existing under the laws of the State of Delaware and is registered as a foreign business corporation with the Rhode Island Secretary of State.

4. Defendants various John and Jane Does, Alias, and John Doe Corporations, Alias, are persons and business entities not yet named as defendants who may be added later as a result of discovery.

5. Each of the Defendants, by virtue of their activities within the state, has the necessary and minimum contacts with the State of Rhode Island to confer jurisdiction on this Court pursuant to R.I. Gen. Laws § 9-5-33, as amended, and to subject Defendants to the personal jurisdiction of the courts of the State of Rhode Island.

6. Subject matter jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1332, as the parties are diverse and the matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand Dollars ($75,000.00).

7. Venue is proper under 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claims occurred in this District.

**Facts**

8. Plaintiff was an employee of Defendant GE from on or about September 5, 1977 to on or about September 14, 2001.

9. On at least three occasions, as an employee of Defendant GE, Plaintiff was given stock options to purchase shares of Defendant GE's common stock as part of an incentive program to reward employees for their performance.

10. This stock option program was administered for Defendant GE by Defendant UBS.

11. On or about February 10, 1995, Plaintiff was awarded three thousand (3,000) stock options at a price of $8.6875 per option. Of these, he exercised five hundred (500), leaving a balance of two thousand, five hundred (2,500).

12. On or about July 16, 1996, Plaintiff was awarded nine thousand (9,000) stock options at a price of $13.4791 per option. Plaintiff has never exercised any of these options.

13. On or about December 12, 1997, Plaintiff was awarded three thousand (3,000) stock options at a price of $24.0833 per option. Plaintiff has never exercised any of these options.

14. Pursuant to Defendant GE's stock option program, fifty per cent (50%) of the stock options for each grant became available for exercise in the third September following the grant date and the remaining fifty per cent (50%) became exercisable in the fifth September following the grant date. Thus, all of Plaintiff's options became exercisable on or before September, 12, 2002.

15. In addition, pursuant to Defendant GE's stock option program, provided an employee was continuously employed with Defendant GE, these stock option grants normally did not expire for ten (10) years from the date of the grant.

16. On or about September 14, 2001, Plaintiff was laid off from employment with Defendant GE.

17. As part of his severance agreement, Plaintiff was given twenty four (24) weeks of salary and other benefits. As a result, his employment with Defendant GE did not officially terminate until on or about March 14, 2002.

18. Pursuant to Defendant GE's stock option program, upon lay off or plant closing, all exercisable stock options normally expired one (1) year after termination of service, or, in Plaintiff's case, on or about March 14, 2003.

19. On or about March 10, 2003, Plaintiff checked the official web site for Defendant UBS in order to exercise his options on or before the expiration date of March 14, 2003.

20. However, at that time, the official website stated that Plaintiff's options did not expire until on or about March 1, 2004. Plaintiff printed out the web site page, a copy of which is attached hereto as Exhibit A.

21. In order to verify this information, Plaintiff also spoke to an agent/servant/employee of Defendant UBS on the same day who confirmed that Plaintiff's options did not expire until March 1, 2004.

22. Based on this information given to Plaintiff by Defendant UBS' agent/servant/employee and as obtained from Defendant UBS' official web site, Plaintiff did not exercise his options on March 10, 2003.

23. But for UBS's representations and assurances regarding the expiration date for Plaintiff's stock options, Plaintiff would have exercised his stock options on March 10, 2003.

24. On or about March 10, 2003, the pending and exercisable value of Plaintiff's options was One Hundred Thirty One Thousand, Eight Hundred Nineteen Dollars and Thirty Five Cents ($131,819.35).

25. In December, 2003, Plaintiff tried again to gain access to Defendant UBS' web site to check on his options. However, at that time access was denied. In addition, he was informed by an agent/servant/employee of Defendant UBS that his stock option account no longer existed.

26. On or about February 16, 2004, Plaintiff wrote to William J. Conaty at Defendant GE to complain about the loss of his stock options. A copy of the letter is attached as Exhibit B.

27. To date, Defendant GE and Defendant UBS have failed, refused and/or neglected to take any action to restore Plaintiff's stock options.

## Count I
## (Breach of Contract)

28. Plaintiff hereby incorporates paragraphs 1-27 of his complaint as if fully stated herein.

29. Defendant GE and Plaintiff entered into an agreement for the purchase of stock options as part of an employee incentive and rewards program.

30. Pursuant to that agreement, Plaintiff was told by Defendant UBS, acting as the agent for Defendant GE, that Plaintiff had up to and including March 1, 2004, to exercise his stock options.

31. By not permitting Plaintiff to exercise his stock options on or before March 1, 2004, Defendant GE has breached the terms of this agreement.

32. Despite repeated demands, Defendant GE has failed and continues to fail and refuses to permit Plaintiff to exercise his stock options.

33. As a direct and proximate result of Defendant GE's breach of the employee incentive stock option agreement, Plaintiff has sustained substantial monetary and other consequential damages.

**Count II**
**(Breach of Good Faith and Fair Dealing)**

34. Plaintiff hereby incorporates paragraphs 1-33 of his complaint as if fully stated herein.

35. There existed an implied covenant of good faith and fair dealing within the employee incentive stock option agreement between Defendant GE and the Plaintiff.

36. Defendant GE breached the implied covenant of good faith and fair dealing by failing and refusing to permit Plaintiff to exercise his stock options.

37. As a direct and proximate result of Defendant GE's breach of the covenant of good faith and fair dealing contained within the employee incentive stock option agreement, Plaintiff has sustained substantial monetary and other consequential damages.

**Count III**
**(Promissory and/or Equitable Estoppel)**

38. Plaintiff hereby incorporates paragraphs 1-37 of his complaint as if fully stated herein.

39. Defendant UBS acted as the agent of Defendant GE with respect to the exercise of the stock options as alleged herein.

40. Plaintiff consulted Defendant UBS's official website and confirmed the information with a UBS agent/servant/employee regarding the time for exercising his stock options.

41. Defendant UBS represented to Plaintiff that he had up to and including March 1, 2004 to exercise his stock options.

42. Those representations were made to induce and did induce Plaintiff to refrain from exercising his stock options on March 10, 2003.

43. Plaintiff reasonably believed that those representations were accurate and that he was not required to exercise his stock options until on or before March 1, 2004.

44. Plaintiff decided not to exercise his stock options on March 10, 2003 in reasonable reliance upon Defendant UBS's representations.

45. As a direct and proximate result of Defendant UBS's representations, attributable to Defendant GE, Plaintiff has sustained substantial monetary losses and other consequential damages.

46. Injustice can only be avoided by permitting Plaintiff to exercise his stock options as of March 10, 2003.

**Count IV**
**(Negligent Misrepresentation)**

47. Plaintiff hereby incorporates paragraphs 1-46 of his complaint as if fully stated herein.

48. Defendant UBS negligently made and supplied false information to Plaintiff relative to the time to exercise his stock options.

49. Defendant UBS, individually and as agent for Defendant GE, had a duty to provide accurate and reliable information to beneficiaries under Defendant GE's employee incentive stock option agreement with respect to the time to exercise stock options.

50. Plaintiff reasonably relied upon Defendant UBS's representations regarding the time to exercise his stock options.

51. Plaintiff suffered serious pecuniary losses as a result of his reliance on Defendant UBS's negligent representations.

52. Plaintiff is entitled to declaratory relief as well as compensatory damages from the Defendants, jointly and severally, for all losses sustained as a result of Defendant UBS's negligent misrepresentations.

**Count V**
**(Fraudulent Misrepresentation/Deceit)**

53. Plaintiff hereby incorporates paragraphs 1-51 of his complaint as if fully stated herein.

54. Defendant UBS, as the agent for Defendant GE, represented to Plaintiff that he had up to and including March 1, 2004, to exercise his stock options.

55. That representation was false.

56. Defendant UBS, as the agent for Defendant GE, made that false representation to Plaintiff with the intention of inducing Plaintiff to not exercise his stock options in a timely manner.

57. Plaintiff did in fact reasonably rely on Defendant UBS' false representation in not exercising his stock options on March 10, 2003.

58. As a direct and proximate result of Defendant UBS' false representation, Plaintiff suffered serious pecuniary losses.

59. Plaintiff is entitled to declaratory relief as well as compensatory damages from Defendant GE for all losses sustained as a result of Defendant UBS's false representation.

**Count VI**
**(Negligence)**

60. Plaintiff hereby incorporates paragraphs 1-59 of his complaint as if fully stated herein.

61. Defendant UBS had a duty to provide accurate and reliable information to Plaintiff as a beneficiary of Defendant GE's employee incentive stock option program.

62. Defendant GE had a duty to ensure that accurate and reliable information was provided to Plaintiff under Defendant GE's employee incentive stock option plan.

63. Defendants GE and UBS failed to exercise due care in providing information to Plaintiff with respect to the time to exercise his stock options.

64. As a direct and proximate result of Defendants' breach of the duty of care owed to Plaintiff, Plaintiff sustained serious monetary losses.

**Count VII**
**(Unjust Enrichment)**

65. Plaintiff hereby incorporates paragraphs 1-64 of his complaint as if fully stated herein.

66. From September 5, 1977 to on or about September 14, 2001, Plaintiff earned stock options pursuant to Defendant GE's employee incentive stock option program based on his performance as an employee.

67. During the time frame referenced above, Plaintiff's performance as an employee inured directly to the benefit of Defendant GE.

68. By not permitting Plaintiff to exercise the stock options which he earned as an employee for Defendant GE based on his performance, Defendant GE has been unjustly enriched.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, and requests that the Court grant the following relief:

(a) Declare that, pursuant to Defendant GE's employee incent ve stock option program, Plaintiff is entitled to exercise his common stock options as of March 10, 2003;

(b) Award Plaintiff compensatory damages for the value of his stock option grants as of March 10, 2003;

(c) Award compensatory damages to Plaintiff for any and all other financial losses sustained by him as a result of Defendants' conduct;

(d) Award Plaintiff interest, costs and attorneys' fees pursuant to R.I. Gen. Laws 45-19-1; and

(e) Award Plaintiff such other and further relief as this Court deems just and proper.

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE AND APPOINTS THE UNDERSIGNED AS TRIAL COUNSEL.

Plaintiff,
By His Attorneys,
Law Offices of William M. Kolb, LLC

William M. Kolb

William M. Kolb, #3664
One Ship Street
Providence, RI 02903
Tel: 401-490-8297
Fax: 401-490-8299

Christine M. Curley (WMK)

Christine M. Curley #4529
275 Beacon Drive
North Kingstown, RI 02852
(401) 294-0847
(401) 294-0849 (fax)

Dated: March 23, 2007