**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| DAVID ROY,<br>*Plaintiff*<br><br>v.<br><br>GENERAL ELECTRIC COMPANY,<br>UBS FINANCIAL SERVICES, INC., f/k/a<br>UBS PAINE WEBBER, INC.,<br>And various John and Jane Does,<br>Alias, and John Doe Corporations,<br>Alias,<br>*Defendants* | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | <br><br><br>C.A. No. 07-107S<br><br><br><br><br><br><br><br>Jury Trial Demanded |

**Plaintiff's Memorandum of Law in Support of Objection to Motions to Dismiss**

Plaintiff David Roy hereby submits this memorandum of law in support of his objection to the motions to dismiss of Defendants General Electric Company and UBS Financial Services, Inc. brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

**Facts**

From September 5, 1977, to September 14, 2001, Plaintiff David Roy ("Roy") worked for Defendant General Electric Company ("GE"). Amended Complaint at ¶ 8, a copy of which is attached hereto as Exhibit A. On three occasions, he was awarded stock options by GE for GE common stock pursuant to an employee incentive stock option program (the "Program") administered for GE by Defendant UBS Financial Services, Inc. ("UBS"). *Id.* at ¶ ¶ 9, 10. Pursuant to the Program, as long as an employee was continuously employed, the options did not expire for ten (10) years from the date of the

grant. *Id.* at ¶ 15. However, pursuant to the Program, when an employee was laid off, the options normally expired one year after the date of termination of service. *Id.* at ¶ 18.

On September 14, 2001, Roy was laid off from employment with GE. *Id.* at ¶ 16. As part of his severance package, he was given twenty four (24) weeks of salary and benefits, so his employment with GE did not terminate until March 1, 2002. *Id.* at ¶ 17. Between September 14, 2001, and March 1, 2003, the date when normally Roy's options would have expired pursuant to the Program, Roy visited the UBS website from time to time to check on his stock option account.[1] *Id.* at ¶ 20. On each of those occasions, the UBS website stated that the options did not expire until March 1, 2004. *Id.* at ¶ 21. As a result, Roy made no effort to exercise his options on or before March 1, 2003. *Id.* at ¶ 21. On March 10, 2003, Roy visited the UBS website again. . *Id.* at ¶ 20. This time he intended to exercise his options since, according to his calculations, they expired on March 14, 2003. *Id.* at ¶ 20. Again, the website stated that the options did not expire until March 1, 2004. *Id.* at ¶ 24. In an effort to verify this information, Roy called UBS and was told by an agent/servant/employee that the options did not expire until March 1, 2004. *Id.* at ¶ 25. As a result, Roy made no effort to try to exercise his options at that time. *Id.* at ¶ 26. In December, 2003, Roy visited the UBS website and was denied access to his account. *Id.* at ¶ 28. In addition, he was told by an agent/servant/employee of UBS that his stock option account no longer existed. *Id.* at ¶ 28. On February 16, 2004, Roy wrote to William J. Conaty at GE complaining of the loss of his stock options. To date, no effort has been made by GE or UBS to restore Roy's lost stock options. *Id.* at ¶ 30.

---

[1] In Paragraph 19 of the Amended Complaint, the date of expiration of the options is plead "On information and belief" because, without the benefit of discovery, Roy can only assume at this point in time that his options officially expired on March 1, 2003.

On March 23, 2007, Roy filed a complaint against GE and USB in which he asserted claims against GE for breach of contract, breach of the implied covenant of good faith and fair dealing and unjust enrichment and against both GE and UBS for promissory and/or equitable estoppel, negligent misrepresentation, fraudulent misrepresentation/deceit and negligence. In the complaint, Roy alleged that but for UBS' misstatement of the deadline for exercising the options, he would have exercised the options on March 10, 2003. GE and UBS then moved to dismiss on the grounds that the deadline for exercising the options expired on March 1, 2003, and, therefore, Roy suffered no harm by the misinformation he was given by UBS on March 10, 2003.

In response to the motions to dismiss, Roy has now amended his complaint. In the amended complaint, he alleges that but for UBS's failure to correctly state the deadline for exercising the options before March 1, 2003, Roy would have exercised the options in a timely manner. Accordingly, Roy requests that the motions to dismiss be denied.

**Argument**

On a motion to dismiss, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, all well plead factual averments must be accepted as true and all reasonable inferences must be indulged in favor of the non moving party. *Calderon-Ortiz v. Laboy-Alvarado*, 300 F. 3d 60, 62-63 (1st. Cir. 2002), citing *SEC v. SG Ltd.*, 265 F. 3d. 42, 46 (1st Cir. 2001). If the facts contained in the complaint, when viewed in a favorable light, justify recovery under any applicable legal theory, the motion to dismiss must be denied. *Id*., citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). Or, to state it another way, "a complaint should not be dismissed for

failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

In the case at bar, Defendants argue that Plaintiff's complaint should be dismissed in its entirety because Plaintiff did not try to exercise his options until after they had expired and, therefore, no harm was caused to Roy by UBS' failure to correctly state the deadline. If, in fact, after being laid off, Roy had not visited the UBS website until March 10, 2003, GE and UBS would be correct in arguing that no harm was caused by UBS' failure to state the correct deadline and, therefore, the complaint should be dismissed. However, that is simply not what happened.

As stated in the Amended Complaint, Roy did visit UBS's website prior to March 1, 2003, and, on each of those occasions, the website stated that the options did not expire until March 1, 2004, one year later than the true expiration date. If, in fact, UBS had correctly stated the deadline on those occasions when Roy visited the website prior to March 1, 2003, it would have put Roy on notice that his calculations regarding the time to exercise the options was wrong and that he needed to exercise the options before March 1, 2003. However, the UBS website failed to do that and, as a result, Roy was harmed. Thus, the various counts of Roy's complaint, as amended, do state claims for which relief can be granted.

Count One deals with GE's breach of the employee incentive stock option contract between it and Roy. Here, there is no dispute that a valid contract existed between the parties pursuant to which GE was obligated to permit Roy to exercise his options as long as he did so in a timely manner. The only reason why Roy did not do so in this situation was due to the actions of UBS, GE's agent. Under agency principles,

once UBS changed the date for performance, GE was bound by it unless UBS was acting outside the scope of its authority. *Bloomberg v. Pugh Bros. Co*., 45 R.I. 360, 364-365, 121 A. 430, 431 (RI 1923) ("The defendant has received the money of the plaintiff paid upon the contract, and it is well established that a principal can not retain advantage from his agent's fraud and avoid responsibility therefore. He is estopped to disclaim connection with such fraud.") Therefore, for GE to prevent Roy from exercising his options on or before March 1, 2004, constituted a breach of the agreement between it and Roy. Thus, Count One states a claim for which relief can be granted. The same is true with respect to Count Two.

Count Two has to do with GE's breach of the covenant of good faith and fair dealing contained in the stock option agreement between it and Roy. Under Rhode Island law, almost all contracts contain an implied covenant of good faith and fair dealing. *Dovenmuehle Mortgage Inc. v. Antonelli*, 790. A.2d 1113 (RI 2002) ("Virtually every contract contains an implied covenant of good faith and fair dealing between the parties.") The purpose of the covenant is to insure that contractual objectives are achieved. *Ide Farm & Stable Inc. v. Cardi*, 110 R.I. 735, 739,740, 297 A.2d 643, 645 (1972). Under this covenant, once a contract is formed, all parties to the contract must refrain from doing anything to prevent another party from enjoying the benefits of the contract. *Id*. In the case at bar, once UBS had altered the date for exercising the options, GE had an obligation to honor that date and permit Roy to have up to and including March 1, 2004, to exercise his options. For GE to cancel Roy's option account when the only reason why he did not exercise the options in a timely manner was due to the actions of UBS, GE's agent, constitutes a breach of the covenant of good faith and fair dealing.

Thus, Count Two states a claim upon which relief can be granted. The same is true for Count Three.

Count Three deals with promissory and/or equitable estoppel. In order to prevail on a claim of equitable estoppel, Roy must prove

> "first, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that such representation or conduct in fact did induce the other to act or fail to act to his injury."

*Providence Teachers Union v. Providence School Board*, 689 A.2d 388, 391-393 (RI 1997) quoting from *Lichtenstein v Parness*, 81 R.I. 135, 138, 99 A.2d 3, 5 (1953).

Similarly, under a theory of promissory estoppel, Roy must prove

> "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of its promise."

*East Providence Credit Union v Geremia*, 103 R.I. 597, 239 A.2d 725 (1968), quoting from 1 *Restatement, Contracts*, § 90, p. 110.

Under either theory, whether it was by way of promise or affirmative representation, UBS, as the agent for GE, definitely acted in such a manner as to induce Roy to not exercise his options in a timely manner, thereby causing him injury. As a result, both GE and UBS should be estopped from claiming that the exercise date for the options was March 1, 2003, as opposed to March 1, 2004. Thus, Count Three states a claim upon which relief can be granted. The same is also true with respect to Count Four.

Count Four sounds in negligent misrepresentation. In order to prevail on this count, Roy must establish

> "(1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation."

*Zarella v. Minnesota Mutual Life Insurance Company*, 824 A.2d 1249, 1257 (RI 2003), citing *Mallette v. Children's Friend & Service*, 661 A.2d 67, 69 (R.I. 1995), quoting *Gibbs v. Ernst*, 539 Pa. 193, 647 A.2d 882 (Pa. 1994).

Here, UBS, as the agent for GE, certainly made a material misrepresentation about the exercise date for the options, which UBS should have known was wrong, with the intention of inducing Roy to rely on that date to exercise his options, with injury resulting. In addition, Roy's reliance on that date was justifiable since the employee incentive stock option agreement between him and GE stated that "normally" options expire in one year after termination of service, i.e., not always, and, when Roy called UBS to verify that the expiration date was March 1, 2004, they told him that was the correct date, even though it was wrong. Thus, Count Four states a claim upon which relief can be granted and so does Count Five.

Count Five sounds in fraudulent misrepresentation and/or deceit. In order to recover on this count, Roy must prove essentially the same elements as negligent misrepresentation with one clear exception, namely, the intent to deceive. As stated by the court in *International Shoe Company v Berick*, 55 R.I. 333, 335, 181 A. 297, 298 (1935), "The gist of actionable fraudulent misrepresentation is that it is intended to produce a false belief in the mind of the person to whom the representation is made with the intent that he will act upon such representation." *Id.* Whether or not GE and/or UBS acted with intent is a question of fact which will only be determined through discovery.

Thus, until such time as proven otherwise, Count Five states a claim upon which relief can be granted, as does Count Six.

Count Six sounds in negligence. Under Rhode Island law, “a party who fails to exercise reasonable care in carrying out a contract may be liable in tort as well as contract for resulting harm.” *National Chain Co. v. Campbell*, 487 A.2d 132, 136, (R.I. 1985), citing *Buszta v. Souther*, 102 R.I. 609, 232 A.2d 396 (1967). Here, GE and/or UBS owed a duty to Roy to use reasonable care in establishing the correct deadline for the exercise of his options. By telling him that the deadline was March 1, 2004, instead of March 1, 2003, they clearly breached that duty of care, as a result of which Roy was harmed. Consequently, Count Six states a claim upon which relief can be granted, as does Count Seven.

Count Seven, the final count in the Amended Complaint, sounds in unjust enrichment. As stated by the court in *Dellagrotta v. Dellagrotta*, 873 A.2d 101, 113, 114 (R.I. 2005),

> To recover for unjust enrichment, a claimant must prove: (1) that he or she conferred a benefit upon the party from whom relief is sought; (2) that the recipient appreciated the benefit; and (3) that the recipient accepted the benefit under such circumstances "that it would be inequitable for [the recipient] to retain the benefit without paying the value thereof."

*Id*., quoting from *Bouchard v. Price*, 694 A.2d 670, 673 (R.I. 1997).

In the case at bar, by his performance while employed, Roy conferred a benefit upon GE. GE certainly must have appreciated the benefit of Roy’s efforts because it rewarded him with stock options. For Roy to not be permitted to exercise his stock options because of the actions of UBS, GE’s agent, would certainly be inequitable. Thus, Count Seven states a claim upon which relief can be granted.

## Conclusion

All of the counts in Roy's Amended Complaint state a claim upon which relief can be granted. Accordingly, the motions to dismiss of both GE and UBS should be denied.

Plaintiff,
By His Attorneys,

/s/ William M. Kolb
William M. Kolb, #3664
Law Offices of William M. Kolb, LLC
One Ship Street
Providence, RI 02903
Tel: 401-490-8297
Fax: 401-490-8299

## Certification

I hereby certify that on the 16th day of July, 2007, a true copy of the foregoing was served by electronic means (ECF) upon the following:

David Wollin, Esq.
Adler, Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI m02903

Robert M. Duffy, Esq.
Rachelle R. Green, Esq.
Duffy, Sweeny & Scott, Ltd.
One Turks Head Place
Providence, RI 02903

/s/ William M. Kolb