**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| DAVID ROY,<br>*Plaintiff* | : | |
| v. | : | C.A. No. 07-107S |
| GENERAL ELECTRIC COMPANY,<br>UBS FINANCIAL SERVICES, INC., f/k/a<br>UBS PAINE WEBBER, INC.,<br>And various John and Jane Does,<br>Alias, and John Doe Corporations,<br>Alias,<br>*Defendants* | : | Jury Trial Demanded |

**Amended Complaint**

Now comes Plaintiff and hereby files the following amended complaint against Defendants:

**Parties and Jurisdiction**

1. Plaintiff David Roy ("Roy") is a resident of the State of Rhode Island and currently lives in Saunderstown, Rhode Island.

2. Defendant General Electric Company ("GE") is a foreign corporation organized and existing under the laws of the State of New York and is registered as a foreign business corporation with the Rhode Island Secretary of State.

3. Defendant UBS Financial Services, Inc., formerly known as UBS Paine Webber, Inc., ("UBS") is a foreign corporation organized and existing under the laws of the State of Delaware and is registered as a foreign business corporation with the Rhode Island Secretary of State.

4. Defendants various John and Jane Does, Alias, and John Doe Corporations, Alias, are persons and business entities not yet named as defendants who may be added later as a result of discovery.

5. Each of the Defendants, by virtue of their activities within the state, has the necessary and minimum contacts with the State of Rhode Island to confer jurisdiction on this Court pursuant to R.I. Gen. Laws § 9-5-33, as amended, and to subject Defendants to the personal jurisdiction of the courts of the State of Rhode Island.

6. Subject matter jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1332, as the parties are diverse and the matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand Dollars ($75,000.00).

7. Venue is proper under 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claims occurred in this District.

**Facts**

8. Roy was an employee of GE from on or about September 5, 1977 to on or about September 14, 2001.

9. On at least three occasions, as an employee of GE, Roy was given stock options to purchase shares of GE's common stock as part of an incentive program to reward employees for their performance.

10. This stock option program was administered for GE by UBS, which, among other things, administered a website where GE employees could go to review their stock option accounts and transact business such as the exercise of stock options.

11. On or about February 10, 1995, Roy was awarded three thousand (3,000) stock options at a price of $8.6875 per option. Of these, he exercised five hundred (500), leaving a balance of two thousand, five hundred (2,500).

12. On or about July 16, 1996, Roy was awarded nine thousand (9,000) stock options at a price of $13.4791 per option. Roy has never exercised any of these options.

13. On or about December 12, 1997, Roy was awarded three thousand (3,000) stock options at a price of $24.0833 per option. Roy has never exercised any of these options.

14. Pursuant to GE's stock option program, fifty per cent (50%) of the stock options for each grant became available for exercise in the third September following the grant date and the remaining fifty per cent (50%) became exercisable in the fifth September following the grant date. Thus, all of Roy's options became exercisable on or before September, 12, 2002.

15. In addition, pursuant to GE's stock option program, provided an employee was continuously employed with GE, these stock option grants normally did not expire for ten (10) years from the date of the grant.

16. On or about September 14, 2001, Roy was laid off from employment with GE.

17. As part of his severance agreement, Roy was given twenty four (24) weeks of salary and other benefits. As a result, his employment with GE did not officially terminate until on or about March 1, 2002.

18. Pursuant to GE's stock option program, upon lay off or plant closing, all exercisable stock options normally expired one (1) year after termination of service.

19. On information and belief, pursuant to GE's stock option program, Roy's stock options expired on March 1, 2003.

20. Between September 14, 2001, and March 1, 2003, Roy checked the UBS website periodically to review his stock option account.

21. On each of those occasions, the UBS website stated that Roy's stock options did not expire until March 1, 2004.

22. As a result of this information, Roy did nothing to exercise his stock options on or before March 1, 2003.

23. On March 10, 2003, Roy went to the UBS website to exercise his stock options because he had erroneously calculated that they expired on March 14, 2003.

24. At that time, just like on the prior occasions, the website stated that Roy's options did not expire until March 1, 2004. Roy printed out the web site page, a copy of which is attached to the original complaint as Exhibit A.

25. On March 10, 2003, Roy also called UBS by telephone and was told by a UBS agent/servant/employee that the options did not expire until March 1, 2004.

26. As a result of the information given to Roy by UBS regarding the time to exercise his options, Roy did not try to exercise his options on March 10, 2003.

27. On or about March 10, 2003, the pending and exercisable value of Roy's options was One Hundred Thirty One Thousand, Eight Hundred Nineteen Dollars and Thirty Five Cents ($131,819.35).

28. In December, 2003, Roy once again visited the UBS website in order to review his stock option account. However, this time access was denied. In addition, he was informed by an agent/servant/employee of UBS that his stock option account no longer existed.

29. On or about February 16, 2004, Roy wrote a letter to William J. Conaty at GE to complain about the loss of his stock options. A copy of the letter was attached to the original complaint as Exhibit B.

30. To date, GE and UBS have failed, refused and/or neglected to take any action to restore Roy's stock options.

## **Count I**
## **(Breach of Contract)**

31. Roy hereby incorporates by reference paragraphs 1-30 of his complaint as if fully stated herein.

32. GE and Roy entered into an employee stock option agreement pursuant to which Roy was entitled to earn stock options based on the performance of his work.

33. Pursuant to that agreement, Roy was told by UBS, acting as the agent for GE, that Roy had up to and including March 1, 2004, to exercise his stock options.

34. By not permitting Roy to exercise his stock options on or before March 1, 2004, GE has breached the terms of this agreement.

35. Despite repeated demands, Defendant GE has failed and continues to fail and refuses to permit Plaintiff to exercise his stock options.

36. As a direct and proximate result of Defendant GE's breach of the employee incentive stock option agreement, Plaintiff has sustained substantial monetary and other consequential damages.

**Count II**
**(Breach of Good Faith and Fair Dealing)**

37. Roy hereby incorporates by reference paragraphs 1-36 of his complaint as if fully stated herein.

38. There existed an implied covenant of good faith and fair dealing within the employee incentive stock option agreement between GE and Roy.

39. GE breached the implied covenant of good faith and fair dealing by failing and refusing to permit Roy to exercise his stock options.

40. As a direct and proximate result of GE's breach of the covenant of good faith and fair dealing contained within the employee incentive stock option agreement, Roy has sustained substantial monetary and other consequential damages.

**Count III**
**(Promissory and/or Equitable Estoppel)**

41. Roy hereby incorporates by reference paragraphs 1-40 of his complaint as if fully stated herein.

42. UBS acted as the agent for GE with respect to the exercise of stock options pursuant to GE's employee incentive stock option program.

43. Roy consulted UBS's website and confirmed the information with a UBS agent/servant/employee regarding the time for exercising his stock options.

44. UBS represented to Roy that he had up to and including March 1, 2004 to exercise his stock options.

45. Those representations were made to induce and did induce Roy to refrain from exercising his stock options on or before March 1, 2003.

46. Roy reasonably believed that those representations were accurate and that he was not required to exercise his stock options until on or before March 1, 2004.

47. Roy decided not to exercise his stock options on or before March 1, 2003 in reasonable reliance upon UBS's representations.

48. As a direct and proximate result of UBS's representations, attributable to GE, Roy has sustained substantial monetary losses and other consequential damages.

49. Injustice can only be avoided by permitting Roy to exercise his stock options as of either March 1, 2003, or March 10, 2003.

**Count IV**
**(Negligent Misrepresentation)**

50. Roy hereby incorporates by reference paragraphs 1-49 of his complaint as if fully stated herein.

51. UBS negligently made and supplied false information to Roy relative to the time to exercise his stock options.

52. UBS, individually and as agent for GE, had a duty to provide accurate and reliable information to beneficiaries under GE's employee incentive stock option agreement with respect to the time to exercise stock options.

53. Roy reasonably relied upon UBS's representations regarding the time to exercise his stock options.

54. Roy suffered serious pecuniary losses as a result of his reliance on UBS's negligent representations.

55. Roy is entitled to declaratory relief as well as compensatory damages from GE and UBS, jointly and severally, for all losses sustained as a result of UBS's negligent misrepresentations.

**Count V**
**(Fraudulent Misrepresentation/Deceit)**

56. Roy hereby incorporates by reference paragraphs 1-55 of his complaint as if fully stated herein.

57. UBS, as the agent for GE, represented to Roy that he had up to and including March 1, 2004, to exercise his stock options.

58. That representation was false.

59. UBS, as the agent for GE, made that false representation to Roy with the intention of inducing Roy to not exercise his stock options in a timely manner.

60. Roy did in fact reasonably rely on UBS' false representation in not exercising his stock options on or before March 1, 2003.

61. As a direct and proximate result of UBS' false representation, Roy suffered serious pecuniary losses.

62. Roy is entitled to declaratory relief as well as compensatory damages from GE for all losses sustained as a result of UBS's false representation.

**Count VI**
**(Negligence)**

63. Roy hereby incorporates by reference paragraphs 1-62 of his complaint as if fully stated herein.

64. UBS had a duty to provide accurate and reliable information to Roy as a beneficiary of GE's employee incentive stock option program.

65. GE had a duty to ensure that accurate and reliable information was provided to Roy under GE's employee incentive stock option plan.

66. GE and UBS failed to exercise due care in providing information to Roy with respect to the time to exercise his stock options.

67. As a direct and proximate result of GE and UBS' breach of the duty of care owed to Roy, Roy sustained serious monetary losses.

**Count VII**
**(Unjust Enrichment)**

68. Roy hereby incorporates by reference paragraphs 1-67 of his complaint as if fully stated herein.

69. From September 5, 1977 to on or about September 14, 2001, Roy earned stock options pursuant to GE's employee incentive stock option program based on his performance as an employee.

70. During the time frame referenced above, Roy's performance as an employee inured directly to the benefit of GE.

71. By not permitting Roy to exercise the stock options which he earned as an employee for GE based on his performance, GE has been unjustly enriched.

WHEREFORE, Roy demands judgment against GE and UBS, jointly and severally, and requests that the Court grant the following relief:

(a) Declare that, pursuant to GE’s employee incentive stock option program, Roy is entitled to exercise his common stock options as of either March 1, 2003, or March 10, 2003;

(b) Award Roy compensatory damages for the value of his stock option grants;

(c) Award compensatory damages to Roy for any and all other financial losses sustained by him as a result of GE and UBS’’ conduct;

(d) Award Roy interest, costs and attorneys' fees pursuant to R.I. Gen. Laws 45-19-1; and

(e) Award Roy such other and further relief as this Court deems just and proper.

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE AND APPOINTS THE UNDERSIGNED AS TRIAL COUNSEL.

Plaintiff,
By His Attorneys,
Law Offices of William M. Kolb, LLC

/s/ William M. Kolb
William M. Kolb, #3664
One Ship Street
Providence, RI 02903
Tel: 401-490-8297
Fax: 401-490-8299

**Certification**

I hereby certify that on the 16th day of July, 2007, a true copy of the foregoing was served by electronic means (ECF) upon the following:

David Wollin, Esq.
Adler, Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI m02903

Robert M. Duffy, Esq.
Rachelle R. Green, Esq.
Duffy, Sweeny & Scott, Ltd.
One Turks Head Place
Providence, RI 02903

/s/ William M. Kolb