UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DAVID ROY,<br>*Plaintiff,*<br><br>VS.<br><br>GENERAL ELECTRIC COMPANY<br>UBS FINANCIAL SERVICES INC., f/k/a<br>UBS PAINE WEBBER, INC. and various<br>John and Jane Does, Alias, and John Doe<br>Corporation, Alias<br><br>*Defendants.* | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | C. A. No. 07-107S |

**DEFENDANT UBS FINANCIAL SERVICES INC.'S
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant, UBS Financial Services, Inc. ("UBS"), hereby moves for an order of this Court dismissing all causes of action plaintiff asserts against UBS, Counts III, IV, V, and VI of plaintiff's Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). In support of its motion, UBS relies on the Memorandum of Law filed contemporaneously herewith.

Respectfully submitted,
UBS FINANCIAL SERVICES INC.
By its attorneys,

/s/ Rachelle R. Green, Esq.
Robert M. Duffy, Esq. (# 4428)
Rachelle R. Green, Esq. (#5870)
Duffy Sweeney & Scott, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-telephone
401) 455-0701-facsimile

Dated: August 20, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that the within *Defendant UBS Financial Services, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint* was filed through the ECF system on the 20th day of August, 2007, and will be sent electronically to the counsel listed below who are registered participants identified on the Notice of Electronic Filing or in the manner specified:

***Via Electronic Filing***

William M. Kolb, Esq.
Law Offices of William M. Kolb, Esq., LLC
One Ship Street
Providence, RI 02903

David A. Wollin, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

/s/ Rachelle R. Green

*H:\Clients\UBS\Roy\Pleadings\ MTD Amd Compl.doc*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DAVID ROY,<br>*Plaintiff,*<br><br>VS.<br><br>GENERAL ELECTRIC COMPANY<br>UBS FINANCIAL SERVICES INC., f/k/a<br>UBS PAINE WEBBER, INC. and various<br>John and Jane Does, Alias, and John Doe<br>Corporation, Alias<br><br>*Defendants.* | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | C. A. No. 07-107S |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

## I. INTRODUCTION

In his Amended Complaint, plaintiff David Roy ("Mr. Roy") admits his original complaint is legally infirm. *See* Plaintiff's Memorandum of Law in Support of Objection to Motions to Dismiss ("Plaintiff's Objection")at p. 4.[1] He also now expressly admits a critical fact: that he failed to exercise his options by March 1, 2003, the date required by GE's stock options program, due to his own miscomputation of his official termination date. Mr. Roy concedes that his own admitted mistake led him to believe that his options did not expire until March **14**, 2003, rather than March **1**, 2003. Yet despite these admissions, Mr. Roy continues to blame GE and UBS for the unexercised expiration of his options by attributing his own delay in exercising them to his alleged justifiable reliance on an incorrect expiration

[1] Mr. Roy concedes that "[i]f, in fact, after being laid off, Roy had not visited the UBS website until March 10, 2003, GE and UBS would be correct in arguing that no harm was caused by UBS' failure to state the correct deadline and, therefore, the complaint should be dismissed." Plaintiff's Objection, p. 4.

deadline he allegedly observed during "periodic" visits to the UBS website prior to March 1, 2003. However, Mr. Roy cannot overcome the fundamental fact that he had direct knowledge that GE's stock options expired one year after his official termination date (*i.e.,* March 1, 2002); he admits the same in his Amended Complaint. (Amended Complaint, ¶ 18 ("Pursuant to GE's stock option program, upon lay off or plant closing, all exercisable options normally expired one (1) year after termination of service.").) Given the terms of GE's stock option program, of which Mr. Roy was fully aware (and which the UBS website incorporated), Mr. Roy cannot prove justifiable reliance on UBS's alleged misrepresentation. Without reliance, Mr. Roy cannot prove causation, a vital element to each of his causes of action against UBS.

Mr. Roy's fraud claims against UBS are also insufficient as a matter of law and fail to comport with Fed. R. Civ. P. 9(b) because the Amended Complaint fails to identify the UBS representative(s) making the alleged misrepresentation, the contents of the misrepresentation, and where and when it took place. The fraud claim also fails to provide facts to support Mr. Roy's bald assertion that UBS made the alleged false representation "with the intention of inducing Roy to not exercise his stock options in a timely manner." (Amended Complaint, ¶ 59.)

Mr. Roy's Amended Complaint should also be dismissed for at least the following reasons: (1) Count IV of Mr. Roy's Amended Complaint (Negligent Misrepresentation) is barred by the applicable statute of limitations; (2) Mr. Roy fails to allege the predicate facts necessary to state sustainable claims against UBS for Counts III (Promissory and/or Equitable Estoppel), IV (Negligent Misrepresentation), V (Fraudulent Misrepresentation/Deceit) and VI (Negligence) of his Amended Complaint; (3) Counts IV

(Negligent Misrepresentation) and VI (Negligence) of Mr. Roy's Amended Complaint are barred by the economic loss doctrine; and (4) Count V (Fraudulent Misrepresentation/Deceit) of Mr. Roy's Amended Complaint is barred because he failed to allege fraud with the requisite particularity. Accordingly, pursuant to Federal Rule of Civil Procedure 9(b) and 12(b)(6), Mr. Roy's causes of action against UBS should be dismissed.

## II. FACTS[2]

Mr. Roy was employed by GE from September 5, 1997, until he was laid off on September 14, 2001 (Mr. Roy's "Lay Off Date"). (*Id.* at ¶ 8, 16). As part of its incentive program, during his employment, GE gave Mr. Roy stock options to purchase shares of the company's common stock on at least three occasions. (*Id.* at ¶ 9). At the time he was terminated, Mr. Roy had 14,500 stock options, exercisable at different prices. (*Id.* at ¶¶ 11 – 13). All of these options were exercisable on or before September 12, 2002. (*Id.* at ¶ 14).

Upon termination, pursuant to Mr. Roy's severance agreement with GE, he was given 24 weeks of salary and other benefits. (*Id.* at ¶ 17; Complaint, Exhibit E, Letter from Mr. Roy to William J. Conaty, dated February 16, 2004 (referencing "24 weeks of salary continuance")). Therefore, it is undisputed that Mr. Roy's employment with GE officially terminated 24 weeks after Mr. Roy's Lay Off Date (September 14, 2001), on March 1, 2002 (Mr. Roy's "Termination Date"). (Amended Complaint, ¶ 17).

Upon lay off, GE's stock option program dictated that the former employee's options were exercisable within one year after termination of service, rather than within the normal 10-year option period applicable if the employee remained with the company. (*Id.* at ¶¶ 15,

---

[2] As is required by Fed. R. Civ. P. 12(b)(6), in this section, all facts taken from the allegations of Plaintiff Roy's Complaint, noted by paragraph number, are accepted as true for purposes of this motion only. However, this Court may dismiss a claim under Rule 12(b)(6) if Mr. Roy's factual allegations are not sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, *1960 (U.S. 2007).

18). Therefore, it is undisputed that all of Mr. Roy's GE stock options were exercisable from at least September 12, 2002 until one year after Mr. Roy's Termination Date, or March 1, 2003 (Mr. Roy's "Exercise Expiration Date"). (*Id.* at ¶ 19).

Unfortunately for Mr. Roy, however, he miscalculated the Exercise Expiration Date for his options – he thought he had until March **14**, 2003, rather than until March **1**, 2003, within which to exercise his GE options. (*Id.* at ¶ 23). Apparently, he erroneously performed the deadline calculation by adding one year and **6 months** to his Termination Date, rather than one year and **24 weeks**, which he knew was the correct time period. (Amended Complaint, ¶ 17 ("As part of his severance agreement, Roy was given twenty four (24) weeks of salary and other benefits. As a result, his employment with GE did not officially terminate until on or about March 1, 2002."), ¶ 22 ("On March 10, 2003, Roy went to the UBS website to exercise his stock options **because he had erroneously calculated that they expired on March 14, 2003**.").)

GE's stock option program was administered by UBS. (*Id.* at ¶ 10). According to the Amended Complaint, "[b]etween September 14, 2001 and March 1, 2003, [Mr.] Roy checked the UBS website periodically to review his stock options account." (*Id.* at ¶ 20). On each of these occasions, Mr. Roy claims that the UBS website stated that his options did not expire until almost a year after he thought they should have, on March **1, 2004**. (*Id.* at ¶ 21). Mr. Roy offers no explanation for his failure to contact GE, the employer that granted the options at issue, or to otherwise investigate the discrepancy between the expiration date allegedly posted on the UBS website and the date he allegedly believed was the expiration date. By his own admission, Mr. Roy failed to take any action in furtherance of exercising his stock options prior to March 1, 2003, the Exercise Expiration Date. Nor does Mr. Roy allege that

he had contact with any UBS representative within the period he could have exercised his options.

It was not until March 10, 2003, more than a week ***after*** his Exercise Expiration Date, that Mr. Roy alleges he first attempted to exercise his options. On that day, he visited UBS' website "to exercise his stock options because he had erroneously calculated that they expired on March 14, 2003." (*Id.* at ¶ 19). On March 10, 2003, "just like the on the prior occasions "he allegedly accessed his options information on the UBS website, the site again incorrectly stated that Mr. Roy's stock options did not expire until March 1, 2004, rather than the actual Exercise Expiration Date of March 1, 2003. (*Id.* at ¶ 23). This time, he printed a copy of the web page (attached as Exhibit A to his original Complaint) and immediately called a UBS representative, who recited to him the same incorrect exercise expiration date reflected on the UBS website. (*Id.* at ¶¶ 24, 25). The web page Mr. Roy printed on March 10, 2003, which presumably contained the same information as his previous alleged visits to the UBS website, contains the following language:

> All awards shown are subject to the terms of the grants of such awards and of the Plan under which the grants were made. Termination of employment will affect the ability of being exercised and the expiration of options.
>
> Information displayed reflects 12 years of grant and applicable exercise history as maintained in the General Electric Company's records. All historical data is shown on a split adjusted basis. GE reserves the right to make corrections to this data.

(Complaint, Exhibit A).

In December 2003, Mr. Roy again attempted to view his options information via the UBS website. (*Id.* at ¶ 28). However, according to Mr. Roy, he was told at that time that his stock option account no longer existed. (*Id.*). He waited until February 16, 2004 to complain to GE about the loss of his options and waited more than four years after his options expired

(and more than three years after his letter to GE) to file suit against UBS and GE. (*Id.* at ¶ 29, Complaint).

## III. ARGUMENT

### A. Applicable Law.

The instrument governing GE's stock option plan dictates that New York law applies to Mr. Roy's claims. (GE 1990 Long-Term Incentive Plan, as Amended and Restated as of August 1, 1997, Section 8(f), attached hereto as *Exhibit A*). Moreover, UBS's principal place of business was in New York at all times relevant to Mr. Roy's action, and any alleged misrepresentations by UBS would have originated there.

### B. The Legal Standard for Dismissal.

A well-pled complaint must state factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory. *See Platten v. HG Berm. Exempted Ltd.*, 437 F.3d 118, 127 (1st Cir. 2006)(citations omitted). Dismissal under Rule 12(b)(6) is appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Rhode Island Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 99 F. Supp.2d 174, *177 (D.R.I. 2000)(citations omitted); 5A Wright and Miller, *Federal Practice and Procedure* § 1357 (1990). While a cause of action attacked by a motion to dismiss need not contain detailed factual allegations, to avoid dismissal a plaintiff must satisfy his "obligation to provide the 'grounds' of his 'entitle[ment] to relief,'" which "requires more than labels and conclusions[;] a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, *1964 -1965 (U.S. 2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d

ed.2004) (hereinafter Wright & Miller). Indeed, "minimal requirements are not tantamount to nonexistent requirements." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). The standard "does not mean . . . that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized. '[E]mpirically unverifiable' conclusions, not 'logically compelled, or at least supported, by the stated facts,' deserve no deference." *United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992)(citations omitted). The court need not accept as true "bald assertions," inferences unsupported by facts set out in the complaint, or legal conclusions cast as factual allegations. *Abbott v. United States*, 144 F.3d 1, 2 (1st Cir. 1998)(citations omitted).

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court is precluded from considering matters outside of the complaint. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). However, the Court may consider matters fairly incorporated within the complaint, i.e., documents that are integral to a plaintiff's pleadings, and matters susceptible to judicial notice (*e.g.*, calendars and date computations) when deciding a motion to dismiss without converting the motion into one for summary judgment. Fed. R. Evid. 201; (the court may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *see also, Hasbro, Inc. v. Mikohn Gaming Corp.*, 2006 WL 2035501 (D.R.I. 2006)("The First Circuit has adopted a 'practical, common sense approach' for determining what materials may be properly considered on a motion to dismiss.")(*citing Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998)); *Jorge v. Rumsfeld*, 404 F.3d 556, *559 (1st Cir. 2005)(the court should accept well-pleaded fact in complaint and "augment those facts with facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice.").

It is undisputed that Mr. Roy's GE stock options expired on March 1, 2003 – based on the facts Mr. Roy alleged and as admitted in his Amended Complaint. (Amended Complaint, ¶¶ 17-19). Under the cases set forth above, the Court may also consider the language on the copy of UBS's webpage that Mr. Roy printed on March 10, 2003, which he attaches as an exhibit to his original Complaint and admits was the same information he viewed when he allegedly visited the site prior to March 1, 2003. (*Id.* at 24).

### C. <u>Count VI (Negligence) is Time Barred and Counts III (Promissory and/or Equitable Estoppel), IV (Negligent Misrepresentation), V (Fraudulent Misrepresentation) Fail to State Facts Sufficient to Support Mr. Roy's Claims Against UBS</u>.

#### 1. Plaintiff's Negligent Misrepresentation Claim Must Be Dismissed Because It Is Time-Barred and Because He Fails to Assert A Requisite Special Relationship.

Count VI of Mr. Roy's Amended Complaint, for negligent misrepresentation, must be dismissed because it is barred by the applicable 3 year statute of limitations. *See HSBC Bank USA v. Bond, Schoeneck and King, PLLC*, 838 N.Y.S.2$^{d}$ 419, *435 (N.Y. Sup. Ct. 2007("statute of limitations for negligent misrepresentation claims that do not sound in fraud is three years")(*citing Fromer v. Yogel,* 50 F. Supp.2$^{d}$ 227, 242 (S.D.N.Y. 1999)(collecting New York cases)). After Mr. Roy first discovered that he was unable to exercise his GE stock options, he waited more than four years to commence suit against UBS and GE. The negligent misrepresentation claim he asserts in his Amended Complaint does not sound in fraud – he asserts a separate cause of action for fraudulent misrepresentation – and therefore is time-barred.

Even if he had timely filed his cause of action for negligent misrepresentation, it could not survive because no special relationship existed between Mr. Roy and UBS. "New York courts do not recognize a cause of action for negligent misrepresentation in the absence of a

special relationship of trust of confidence between the parties." *Onanuga v. Pfizer, Inc.*, 2003 WL 22670842, *5 (S.D.N.Y. 2003)(*citing Stewart v. Jackson & Nash*, 976 F.2d 86, 90 (2d Cir. 1992); *JP Morgan Chase Bank*, 350 F. Supp.2d at 400-401 (S.D.N.Y. 2004)(a special relationship may be brought about by "either privity of contract between the parties or a relationship so close as to approach that of privity.")(citations omitted). Here, no relationship whatsoever existed between UBS and Mr. Roy; Mr. Roy admits that UBS merely administered GE's stock option program.

**2. Plaintiff Cannot Demonstrate Reasonable or Justifiable Reliance on a Misrepresentation by UBS, which is Necessary to Prove Causation, a Required Element of All of His Claims Against UBS.**

Mr. Roy's promissory estoppel, negligent and fraudulent misrepresentation claims depend in part on a common element: reasonable or justifiable reliance on an alleged promise or misrepresentation by UBS. All of his claims, including his negligence claim, require proof that UBS caused Mr. Roy's harm.

The sole basis for Mr. Roy's claims against UBS is an alleged incorrect options expiration date he saw posted when he "periodically" visited the UBS website prior to the Exercise Expiration Date. UBS moves to dismiss these claims because Mr. Roy could not have reasonably or justifiably relied on a date that conflicted with the Exercise Expiration Date established by GE's stock option program, of which he had direct knowledge. Moreover, the date on UBS's website was accompanied by clear language warning Mr. Roy that the displayed information was subject to the terms of GE's options plans and that GE reserved the right to correct any errors. His lack of justifiable reliance likewise precludes a finding of causation. In fact, it was Mr. Roy's failure to comply with the terms of GE's stock

options program or, at the very least, confirm the correct Exercise Expiration Date, that caused his injury.

a. Elements of Mr. Roy's Claims Against UBS

A cause of action for promissory estoppel (Count III of Mr. Roy's Amended Complaint) under New York law requires the plaintiff to prove three elements: (1) a clear and unambiguous promise; (2) *reasonable and foreseeable reliance on that promise*; and (3) injury to the relying party *as a result of* the reliance. *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000).

A claim for negligent misrepresentation (Count IV of Mr. Roy's Amended Complaint) requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) *reasonable reliance* on the information that *caused* plaintiff's harm. *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, *148, 863 N.E.2d 585, **587 (N.Y. 2007).

"Under New York law, to state a claim for fraud [Count V of Mr. Roy's Amended Complaint] a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) *upon which the plaintiff reasonably relied*; and (5) which *caused* injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001)(*citations omitted*); *see also Russo v. Banc of America Securities, LLC*, 2007 WL 1946541, *7 (S.D.N.Y. 2007)(plaintiff's fraud claim dismissed for failure to show reasonable reliance when Award Agreement explicitly stated options expiration date).

Under New York law, to make out a prime facie case of negligence (Count VI of Mr. Roy's Amended Complaint), a plaintiff must demonstrate that: (1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered *damage as a proximate cause* of that breach. *Russo*, 2007 WL 1946541 at *7.

b. Counts III Through V Fail for Lack of Reasonable or Justifiable Reliance

Reasonable and justifiable reliance on a defendant's representation and damage caused thereby are indispensable elements of each of the misrepresentation-based causes of action Mr. Roy alleges against UBS. New York courts have recognized for over a century that "if the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations." *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, *322 (N.Y. 1959)(citations omitted); *see also Washington Capital Ventures, LLC v. Dynamicsoft, Inc.*, 373 F.2d. 360, 365 (S.D.N.Y. 2005) ("the requirement of reliance is satisfied only if the reliance is reasonable"); *Waksman v. Cohen*, 2002 WL 31466417 (S.D.N.Y. 2002)("New York courts have repeatedly found that reasonable reliance was absent where a party failed to review available records or secure available documentation which would have otherwise armed it with the truth.")(collecting cases); *Rudolf v. Turecek*, 658 N.Y.D.2d 769, 771 (App. Div.3d Dep't 1997)("[W]here a party has the means, by the exercise of reasonable diligence, to ascertain the truth or falsity of material representations, he or she cannot assert justifiable reliance."). In assessing whether reliance on an alleged misrepresentation is reasonable or justifiable, New York courts have developed different standards, depending on the

sophistication of the parties involved, whether the plaintiff had "hints of falsity," and whether "a term of a contract central to the plaintiff's claim explicitly disavows or contradicts any representation on the subject of the supposed misrepresentation." *See JP Morgan Chase Bank v. Winnick*, 350 F. Supp.2d 393 (S.D.N.Y. 2004). New York courts routinely dismiss actions based on a misrepresentation when notice of the "falsehood" to the plaintiff was clear and direct; *i.e.*, when the plaintiff had direct knowledge of the misrepresentation, when the terms of the operative contract conflicted with the representation, or when circumstances surrounding the parties' relationship (e.g., litigation) would arouse suspicion. *Id.* at 405 – 10 (citing cases).

The facts alleged in Mr. Roy's Amended Complaint leave no doubt that Mr. Roy knew from the information he received regarding GE's stock options program that, upon being laid off, he had one year following his official termination (his Termination Date) within which to exercise his options. (Amended Complaint, ¶ 18.) He knew that his Termination Date was 24 weeks after September 14, 2001 (his Lay Off Date), which turned out to be March 1, 2003.[3] (*Id.*, ¶¶ 16 – 19.). The last of Mr. Roy's options became exercisable by their terms in September 2002. Therefore, he had more than 5 months to exercise them before the Exercise Expiration Date. During this time, Mr. Roy claims he "periodically" visited UBS's website and observed a conflicting, March 1, 2004, expiration date.

However, the same UBS webpage that allegedly contained the incorrect options expiration date also contained clear and unambiguous language stating that the information displayed was "**subject to the terms of the grants of such awards and of the Plan under**

---

[3] In the first (and perhaps only) letter he wrote to GE after his options expired, unexercised, Mr. Roy admitted he knew his options expired one year and 24 weeks following his Lay Off Date. He admits the same in his Amended Complaint.

**which the grants were made.**" Additional language warned Mr. Roy that "[t]ermination of employment will affect the ability of being exercised and the expiration of options." The webpage also informed Mr. Roy that "GE reserves the right to make corrections to [the displayed] data." Nevertheless, he failed to take any action to ascertain and/or confirm the applicable expiration date until March 10, 2003, more than a week after his options expired.[4]

Based on the foregoing, Mr. Roy's direct knowledge of the Exercise Expiration Date, coupled with the clear disclaimers posted along with the alleged incorrect expiration date on UBS's website, preclude a finding of reasonable and justifiable reliance on UBS' alleged promise or misrepresentation. Mr. Roy could not, as a matter of law, reasonably or justifiably rely on date on UBS's website that was in conflict with the express terms of GE's stock options program. It was certainly not foreseeable to UBS that he would do so. Therefore Counts III through V against UBS must be dismissed. Count III of Mr. Roy's Amended Complaint, for promissory or equitable estoppel, fails for an additional reason – it fails to state facts sufficient to prove both a clear and unambiguous promise and reasonable reliance.[5] *See*

---

[4] Any information posted on the UBS website or provided to Mr. Roy after March 1, 2003 (*i.e.*, on March 10, 2003 or any later date) had no proximate effect on his failure to exercise his options as a matter of law, because they were non-existent by that time. Indeed, in his objection to UBS's initial motion to dismiss, Mr. Roy concedes that "[i]f, in fact, after being laid off, Roy had not visited the UBS website until March 10, 2003, GE and UBS would be correct in arguing that no harm was caused by UBS' failure to state the correct deadline and, therefore, the complaint should be dismissed." Plaintiff's Objection, p.4. Thus, the conversations Mr. Roy allegedly had with representatives of UBS, all of which occurred after March 10, 2003, are irrelevant to his amended causes of action. That he mistakenly thought his options expired on March 14, 2003, rather than March 1, 2003, because he added six months instead of 24 weeks to his Termination Date, is irrelevant to the claims in his Amended Complaint. Indeed, rather than supporting his causes of action, Mr. Roy's amended facts seriously compromise his credibility. If, as he now claims, he visited the UBS website "periodically" before March 10, 2003, one wonders why he did not print a copy of the information displayed or call UBS earlier. It is much more likely that his original story, that he first visited the UBS website on March 10, 2003 and immediately contacted a UBS representative and printed a copy of the webpage reflecting an expiration deadline allowing him an additional year within which to exercise his options, was accurate. Indeed, before defendants filed their motions to dismiss his original complaint, Mr. Roy was unaware he had miscomputed the expiration date for his options.

[5] In Count III, Mr. Roy alleges that he "consulted UBS's website and confirmed the information with a UBS agent/servant/employee regarding the time for exercising his stock options." (Amended Complaint, ¶ 43) However, he fails to allege predicate facts in the body of his Amended Complaint to support this claim; he admits that he did not have any contact with UBS other than visiting its website prior to the expiration of his options. He also admits that his later conversations would not sustain his claims as a matter of law.

*Knight Securities L.P. v. Fiduciary Trust Co.*, 5 A.D.3d 172, *175 (2004 N.Y. Slip Op. 01504)(promissory estoppel claim dismissed because it was not reasonable for plaintiff to rely on a promise by an entity that contracting party did not control).

c. All of Plaintiff's Claims Against UBS Must Be Dismissed Because He Cannot Prove Proximate Cause.

Finally, Mr. Roy's inability to prove reasonable reliance on the incorrect expiration date posted on UBS's website also precludes a finding of causation, a necessary element of all of his claims against UBS, including Count VI, for negligence.[6] "Reliance is necessary in order to demonstrate causation; where a plaintiff actually knew at the time a representation was made that it was false, [he] cannot claim to have relied on the truth of that representation, and any injury [he] suffers is therefore not attributable to the defendant." *JP Morgan Chase Bank*, 350 F. Supp.2d 393 at *405. Mr. Roy admits he possessed (and his Amended Complaint contains) accurate and necessary information required to timely exercise his options. His failure to do so was the sole cause of his alleged injury. For these reasons, Mr. Roy's Complaint fails to allege the predicate facts necessary to state sustainable claims against UBS.

**3. Plaintiff's Negligence and Negligent Misrepresentation Claims Must Be Dismissed Because They Are Barred By the Economic Loss Doctrine.**

Mr. Roy's Amended Complaint seeks damages for economic losses only. For that additional reason, the "longstanding New York rule, [] that economic loss is not recoverable under a theory of negligence," precludes Counts IV (negligent misrepresentation) and VI

---

[6] Mr. Roy's negligence claim also fails as a matter of law because he has not asserted, nor can he prove, the existence of a duty owed to him by UBS extraneous to his options contract with GE. *See Russo*, 2007 WL 1946541 at *7; *Onanuga v. Pfizer, Inc.*, 2003 WL 22670842 (S.D.N.Y. 2003).

(negligence) of his Amended Complaint. *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp.2d 523 (S.D.N.Y. 2007); *Manhattan Motorcars, Inc. v. Automobili Lamborghini*, 2007 WL 1988144 (S.D.N.Y. 2007)(dismissing actions for negligence and negligent misrepresentation under economic loss rule). To keep "contract law 'from drown[ing] in a sea of tort,'" New York courts restrict plaintiff who have "suffered 'economic loss,' but not personal or property injury, to an action for the benefits of their bargains." *Carmania Corp., N.V. v. Hambrecht Terrell Int'l,* 705 F. Supp. 936, 938 (S.D.N.Y. 1989). Mr. Roy's Amended Complaint fails to allege that he suffered any personal or property damage. For this additional reason, Counts IV and V must be dismissed as a matter of law.

### C. Count V (Fraudulent Misrepresentation/Deceit) Fails to Allege Fraud with the Requisite Particularity.

In addition to dismissing Mr. Roy's fraud claim for failure to state a claim upon which relief can be granted, this claim should be dismissed based on Mr. Roy's failure to plead fraud with the requisite particularity. Rule 9(b) of the Federal Rules of Civil Procedure sets forth additional pleading requirements with respect to allegations of fraud. In particular, Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). To survive a motion to dismiss pursuant to Rule 9(b), a plaintiff must provide actual fraudulent statements or conduct and a basis for its allegations of *scienter*. *See e.g., Powers v. Boston Cooper Corp.*, 926 F.2d 109, 111 (1st Cir. 1991)("[t]his rule entails specifying in the pleader's complaint the time, place, and content of the alleged false or fraudulent representations.").

Here, Mr. Roy fails to allege the time, place and content of any allegedly false statement by UBS. Even as to UBS's alleged oral misrepresentations, which admittedly occurred *after* March 1, 2003, the Exercise Expiration Date, Mr. Roy fails to allege the

contents of UBS's allegedly false statement or when, where and by whom it was made. Instead, Mr. Roy makes conclusory assertions that, for example, "UBS . . . represented to Roy that he had up to and including March 1, 2004, to exercise his stock options." (Amended Complaint, ¶ 57). He also fails to state reasonable reliance[7] on the alleged misrepresentations and the requisite scienter[8] by UBS. King's failure to plead fraud with particularity requires dismissal of Count V of his Amended Complaint. *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996)(plaintiff's failure to plead fraud with particularity required dismissal of claim; "[t]he purpose of this requirement is to 'give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during discovery.")(citations omitted).

---

[7] As "an essential element of a cause of action for fraud, . . . [justifiable] reliance must be pleaded with particularity pursuant to [Federal Rule of Civil Procedure] 9(b)." *Lutin v. New Jersey Steel Corp.*, 1996 WL 636037, *7 (S.D.N.Y. 1996)(*quoting Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir. 1987)); *see also Manning v. Utilities Mutual Ins. Co.*, 254 F.3d 387, 400-01 (2d Cir. 2001)(affirming district court's dismissal of New York fraud claim for failure to plead reasonable reliance with sufficient particularity as required by Rule 9(b)); *Granite Partners, L.P. v. Bear Stearns & Co.*, 58 F. Supp.2d 228, 259 (S.D.N.Y. 1999).

[8] The basis for plaintiff's allegations of *scienter* can be accomplished by "(1) alleging facts to show that defendant[ ] had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996). Mr. Roy fails to satisfy this requirement. Indeed, it is impossible to conceive of any rational motive for UBS to post an incorrect expiration date for Mr. Roy's options.

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice all of the claims in Mr. Roy's Amended Complaint, including Counts III, IV, V and VI against UBS, for failure to state a claim upon which relief can be granted and failure to state fraud with particularity.

Respectfully submitted,

UBS FINANCIAL SERVICES INC.
By its attorneys,

/s/ Rachelle R. Green, Esq.
Robert M. Duffy, Esq. (# 4428)
Rachelle R. Green, Esq. (#5870)
Duffy Sweeney & Scott, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-telephone
(401) 455-0701-facsimile

Dated: August 20, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that the within *Memorandum of Law in Support of Motion to Dismiss Amended Complaint* was filed through the ECF system on the 20th day of August, 2007, and will be sent electronically to the counsel listed below who are registered participants identified on the Notice of Electronic Filing or in the manner specified:

***Via Electronic Filing***

William M. Kolb, Esq.
Law Offices of William M. Kolb, Esq., LLC
One Ship Street
Providence, RI 02903

David A. Wollin, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

/s/ Rachelle R. Green

*H:\Clients\UBS\Roy\Pleadings\Drafts\Mem MTD Amd Complaint.doc*