**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| DAVID ROY,<br>*Plaintiff* | : | |
| v. | : | C.A. No. 07-107S |
| GENERAL ELECTRIC COMPANY,<br>UBS FINANCIAL SERVICES, INC., f/k/a<br>UBS PAINE WEBER, INC.,<br>And various John and Jane Does,<br>Alias, and John Doe Corporations,<br>Alias,<br>*Defendants* | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTION TO MOTIONS TO DISMISS AMENDED COMPLAINT FILED BY DEFENDANT USB FINANCIAL SERVICES, INC. AND DEFENDANT GENERAL ELECTRIC COMPANY**

Plaintiff David Roy hereby submits this memorandum of law in support of his objection to the motions to dismiss his Amended Complaint brought by Defendant USB Financial Services, Inc. ("USB") and Defendant General Electric Company ("GE") (USB and GE are referred to herein collectively as "Defendants") pursuant to Rule 12 (b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure on the grounds that Plaintiff's Amended Complaint sets forth sufficient factual allegations to state a claim upon which relief may be granted.

In further support of his Objection, Plaintiff relies upon the Memorandum of Law in Support of Objection to Motions to Dismiss previously filed with this Court, which is incorporated herein by reference.

**<u>FACTS</u>**

The salient facts alleged in Plaintiff's Amended Complaint must be accepted as true for the purposes of Defendants' Motions to Dismiss.

From September 5, 1977, to September 14, 2001, Plaintiff David Roy ("Roy") worked for Defendant General Electric Company ("GE"). Amended Complaint at ¶ 8. On three occasions, he was awarded stock options by GE for GE common stock pursuant to an employee incentive stock option program (the "Program") administered for GE by Defendant UBS Financial Services, Inc. ("UBS"). *Id.* at ¶ ¶ 9, 10. Pursuant to the Program, as long as an employee was continuously employed, the options did not expire for ten (10) years from the date of the grant. *Id.* at ¶ 15. However, pursuant to the Program, when an employee was laid off, the options normally expired one year after the date of termination of service. *Id.* at ¶ 18.

On September 14, 2001, Roy was laid off from employment with GE. *Id.* at ¶ 16. As part of his severance package, he was given twenty four (24) weeks of salary and benefits, so his employment with GE did not terminate until March 1, 2002. *Id.* at ¶ 17. Between September 14, 2001, and March 1, 2003, the date when normally Roy's options would have expired pursuant to the Program, Roy visited the UBS web site from time to time to check on his stock option account. *Id.* at ¶ 20. On each of those occasions, the UBS web site stated that the options did not expire until March 1, 2004. *Id.* at ¶ 21. As a result, Roy made no effort to exercise his options on or before March 1, 2003. *Id.* at ¶ 21.

On March 10, 2003, Roy visited the UBS web site again. *Id.* at ¶ 20. This time he intended to exercise his options. *Id.* at ¶ 20. Again, the web site stated that the options did not expire until March 1, 2004. *Id.* at ¶ 24. In an effort to verify this information, Roy called UBS and was told by an agent/servant/employee that the options did not expire until March 1, 2004. *Id.* at ¶ 25. As a result, Roy made no effort to try to exercise his options at that time. *Id.* at ¶ 26.

In December, 2003, Roy visited the UBS web site and was denied access to his account. *Id.* at ¶ 28. In addition, he was told by an agent/servant/employee of UBS that his stock option

account no longer existed. *Id.* at ¶ 28. On February 16, 2004, Roy wrote to William J. Conaty at GE complaining of the loss of his stock options. To date, no effort has been made by GE or UBS to restore Roy's lost stock options. *Id.* at ¶ 30.

## STANDARD OF REVIEW

Defendants' Motion to Dismiss Plaintiff's Complaint is grounded upon Fed. R. Civ. Proc. 12 (b)(6), failure to state a claim upon which relief may be granted.

> In ruling on a motion to dismiss, the Court construes the complaint in the light most favorable to plaintiff, taking all well-pleaded allegations as true and giving plaintiff the benefit of all reasonable inferences. . . . Dismissal under Rule 12 (b)(6) is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*See Guilbeault v. R.J. Reynolds Tobacco Company*, 84 F. Supp. 2d 263 (D.R.I. 2000) (internal citations omitted).

The role of the District Court in considering a motion to dismiss under Rule 12 (b)(6) of the Federal Rules of Civil Procedure is to "treat all allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff." *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir. 1989); *Gray v. Derderian*, 2007 WL 386125, *1 (D.R.I. 2007). Under Rule 12(b)(6), the District Court must limit itself to the facts stated in the complaint or incorporated therein by reference. *El Dia, Inc. v. Rossello*, 165 F.3d 106, 110 (1st Cir. 1999).

In *Erickson v. Pardus et al.*, 127 S.Ct. 2197 (2007), the Supreme Court, in reviewing a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss, reiterated part of the essential holding of *Bell Atlantic v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the …claim is and the grounds upon which it rests.' In addition, when ruling on a

> defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the Complaint.

*Erickson*, 127 S.Ct. at 2200 (*quoting Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007)).

No discovery has been conducted in this case. Likewise, no documents or information have been produced by the Defendants pursuant to Rule 26(a) of the Rules of Civil Procedure. In short, it is inappropriate for this Court to consider extraneous materials or construe the documents presented by Defendants on a Rule 12(b)(6) motion.

Plaintiff asserts that its Complaint alleges sufficient facts to withstand Defendants' motion to dismiss with respect to each of his claims as the Defendants have fair notice of the claims and the grounds upon which they rest.

## ARGUMENT

### I. The Amended Complaint States a Claim for Breach of Contract.

It must be emphasized that the one-year expiration date for the exercise of the stock options which Defendants assert is undisputed is not conclusively established by any documents or facts alleged in this case. Defendants attached only a discrete portion of the "GE 1990 Long-Term Incentive Plan, As Amended and Restated as of August 1, 1997" to its Memorandum. Conspicuously absent is any documentation setting forth an actual termination date for Plaintiff's stock options. However, pursuant to the description of GE's stock option program provided to Plaintiff, it is clear that after an involuntary termination "all exercisable option are then ***generally exercisable*** until one year after termination of service." (Emphasis added.) Consequently, without further evidence or documentation, Plaintiff could only allege in his Amended Complaint that the exercisable stock options ***normally*** expired one (1) year after termination of service and that, ***upon information and belief***, pursuant to GE's stock option program, Roy's

stock options expired on March 1, 2003. Indeed, in order to ascertain the actual termination date for his stock options it was necessary for Plaintiff to check the USB web site periodically.

Given this language it is certainly possible that GE could have altered the exercise date for the stock options and that change was reflected on the USB web site when Plaintiff checked it for updates prior to March 2003. It is also apparent that the ability to determine the termination date was within the sole discretion of GE.[1] Without evidence of the actual contract and related documents, it is premature for Defendants to contend that the options had expired on March 1, 2003 at the motion to dismiss stage. Accordingly, the cases cited by Defendants are inapposite. *See Onanuga v. Pfizer, Inc.*, 369 F.Supp. 2d 491 (S.D.N.Y. 2005) (finding that "by its clear terms, the Plan provides that Onanuga's stock options lapsed when he failed to exercise them by May 21, 1997); *Page v. Shainwald*, 169 N.Y. 246 (1901) (letter agreement clearly stated that exercise of option was required to be made on January 1, 1897); *Jones v. Bank of America*, 311 F.Supp. 2d 828 (D.Ariz. 2003) (stock option plan unambiguously set forth 90 day period for expiration of options); *Mullen v. New Jersey Steel Corp.*, 733 F.Supp. 1534 (D.N.J. 1990) (option agreement clearly stated it expired on employment termination date).

In short, it is not established that Plaintiff's stock options actually expired on March 1, 2003 or that Plaintiff was aware of this purported "fact." To the contrary, Plaintiff has alleged that based upon the information provided by USB, his options expired on March 1, 2004. USB, acting as GE's agent, represented on its web site that the termination date for Plaintiff's stock options was March 1, 2004. Unlike the option agreement which the Court found could not be modified by the dates set forth on the stock option web site in *Russo v. Banc of America Securities, LLC*, 2007 WL 1946541 (S.D.N.Y. 2007), the GE Plan documents provided to

Plaintiff did not state that the options ***shall expire*** on 90 days from the termination date but that they ***generally expire*** one year from the termination date. Here, based upon the plan documents, Plaintiff reasonably concluded that the expiration date had been modified by GE on the USB web site. GE's failure to permit Plaintiff to exercise its options prior to March 1, 2004 constituted a breach of contract and Defendants' motions to dismiss Plaintiff's breach of contract claims must be denied.

## II. Plaintiff's Non Contractual Claims are Governed by Rhode Island Law and Are Not Subject to Dismissal.

New York law does not govern Plaintiff's claims for breach of the duty of good faith and fair dealing, promissory and/or equitable estoppel, negligent misrepresentation, negligence and fraud claims simply because there is a choice of law provision with respect to the Plan itself. *See Eastland Bank Massbank for Savings*, 767 F. Supp. 29 (D.R.I. 29) (letter of credit's requirement that it be governed by Massachusetts law does not absolve district court's duty to apply Rhode Island choice of law principles to non contractual issues).

It is well-established that this Court, sitting in diversity, must apply Rhode Island's choice of law rules to determine which state's law should be applied to this dispute. *Nortek, Inc. v. Molnar*, 36 F. Supp.2d 63, 66 (D.R.I. 1999).

With respect to the tort based claims alleged in Plaintiff's Amended Complaint, Rhode Island has abandoned the *lex loci delicti* doctrine, (place where the injury occurred), in favor of the interest-weighing approach to conflicts of laws. *Woodward v. Stewart*, 104 R.I. 290, 299, 243 A.2d 917, 923, *cert. denied*, 393 U.S. 957, 89 S. Ct. 387 (1968). The interest-weighing

---

[1] In this regard, plan documents provided to the Plaintiff indicate that GE was obligated to send to its option holders yearly reports on the number of exercisable options held, which supports the conclusion that the "generally" language implied that the one year termination date was subject to change.

approach involves looking at the particular case facts and determining therefrom the rights and liabilities of the parties "in accordance with the law of the state that bears the most significant relationship to the event and the parties." *Oyola v. Burgos,* 864 A.2d 624, 627 (R.I. 2005) (*quoting Taylor v. Mass. Flora Realty, Inc.*, 840 A.2d 1126, 1128 (R.I. 2004) (per curiam)). Such factors to be considered include "(a) [the] location where the conduct leading to the injury occurred, (b) the parties' domicile, residence or place of business; and (c) the location where the parties' relationship was centered," but by far "the most compelling factor is the location where the injury occurred." *Taylor,* 840 A.2d at 1128.

An examination of these factors must compel this Court to apply Rhode Island law. During his employment with GE, Plaintiff worked in various different states, but never in GE's offices in New York. At all relevant times after his termination, Plaintiff resided in Rhode Island. Plaintiff viewed the USB web site from his home computer in Rhode Island. Because the Defendants knowingly engaged in an ongoing post termination relationship with a Rhode Island resident, the justified expectations of the parties would not be upset or thwarted by the application of Rhode Island law. *See LaPlante v. American Honda Motor Co., Inc.*, 27 F. 3d 731 (1st Cir. 1994). There are no countervailing factors to support the application of New York law.

There is no question that the injuries alleged in this case were sustained by Plaintiff in Rhode Island. Although the Defendants may be located elsewhere, it is undisputed that Rhode Island has a significant interest in protecting its residents from injuries that are sustained within its borders. *See Crellin Technologies, Inc. v. Equipmentlease Corp.*, 18 F. 3d 1, 12 (1st Cir. 1994) (observing that Rhode Island has a substantial interest in protecting its resident companies from deceptive representations). Because this interest outweighs any that New York can bring to

bear, the law of Rhode Island should apply to all of Plaintiff's non contractual claims. *See Robertson Stephens, Inc. v. Chubb Corp.*, 2007 WL 476328, *3 (D.R.I. 2007).

Moreover, under the interest-weighing approach, Rhode Island's statute of limitations would be applicable to Plaintiff's claims. In *Cribb v. Augustyn*, 696 A.2d 285 (R.I. 1997), the Rhode Island Supreme Court found that Rhode Island's statute of limitations would apply to an action brought by a Rhode Island resident despite the fact that the injury occurred in New Hampshire and the action would have been barred under New Hampshire law. The court concluded that Rhode Island, rather than New Hampshire, had the greater interest in determining the time period in which Rhode Island residents may sue or be sued for tort claims arising out of a business relationship that had its origins in this state. *Id.* at 288. *Compare Najarian v. National Amusements, Inc.*, 768 A.2d 1253 (R.I. 2001) (applying Massachusetts law where patron chose to attend movie in Massachusetts, injury and conduct that caused it occurred in Massachusetts and defendant's headquarters was in Massachusetts).

Consequently, Rhode Island has the greater interest in applying its statute of limitations to Plaintiff's claims.

Under Rhode Island law, the general ten year statute of limitations, R.I. Gen. Laws §9-1-13 (a), applies to claims for fraudulent misrepresentation, negligence and negligent misrepresentation. *See Levin v. Kilborn*, 756 A.2d 169 (R.I. 2000); *Water v. Walt Disney World Company*, 237 F. Supp. 2d 162, 166-167 (D.R.I. 2002); *Rusch Factors, Inc. v. Levin*, 284 F.Supp. 85 (D.R.I. 1968). The earliest allegations of fraudulent misrepresentations occurred in September 2001. Accordingly, Plaintiff's Complaint, filed in March 23, 2007, was filed well within the statutory limitations period.

As previously argued in Plaintiff's initial memorandum, incorporated herein by reference, Plaintiff's Amended Complaint states viable claims under Rhode Island law.

In addition, Plaintiff's claim for breach of the duty of good faith and fair dealing is not duplicative of his claim for breach of contract, inasmuch as Plaintiff has alleged that Defendant GE acted affirmatively to prevent Plaintiff from exercising its stock options prior to March 1, 2004.

Also, although equitable estoppel may not be invoked where there is an unambiguous express contract governing the relationship between the parties, the expiration date for the exercise of Plaintiff's stock options was ambiguous, thereby creating a viable estoppel claim. *See Zarrella v. Minnesota Mut. Life Ins. Co.*, 824 A.2d 1249, 1260 (R.I. 2003) (stating that equitable estoppel was not applicable to unambiguous contracts). Moreover, a Plaintiff may bring alternative claims for breach of contract and unjust enrichment at the pleading stage. *Richmond Square Capital Corp. v. Ins. House*, 744 A.2d 401, 402 (R.I.1999); *Hasbro v. Mikohn Gaming Corp.*, 2006 WL 2035501 (D.R.I. 2006).

Likewise, Plaintiff's negligent misrepresentation claims against Defendants is not subject to dismissal at this juncture. As the Rhode Island Supreme Court has recognized, the economic loss doctrine is not necessarily applicable where, as here, the parties shared a close economic relationship thereby making it reasonably foreseeable that the actions of one will harm the other. *See Forte Bros. Inc. v. Nat'l Amusements, Inc.*, 525 A.3d 1301, 1302-03 (R.I.1987) (finding proper a negligence suit by a general contractor against a site engineer because it was reasonably foreseeable that the latter's negligence would cause the resultant damages). Here, USB owed Plaintiff a duty to perform its services non negligently with respect to the GE Plan. *See Ciccone v. Pitassi*, 2004 WL 2075120 (R.I.Super. 2004) (economic loss doctrine did not preclude

negligence claim against bank for its services). Along these lines, there exists a sufficient relationship between Plaintiff and Defendants to impose a duty to provide correct information, inasmuch as both Defendants knew or should have known that Plaintiff would be relying on said information in determining when and whether to exercise his stock options. *See Mallette v. Children's Friend and Service*, 661 A.2d 67, 70 (R.I. 1995) (discussing duty of care to guard against negligent misrepresentation when providing information). Thus, Plaintiff's negligence claims against the Defendants are not barred by the economic loss doctrine.

## III. Plaintiff's Amended Complaint Complies With Pleading Requirements of Rule 9(b) of the Rules of Civil Procedure.

To establish a claim for fraudulent misrepresentation, a plaintiff must establish: (1) a false or misleading statement of material fact; (2) that was known to the defendant to be false; (3) that was made to deceive; and (4) upon which plaintiff relied to his detriment. *Guilbeault v. R.J. Reynolds Tobacco Co.*, 84 F. Supp. 2d 263, 268 (D.R.I. 2000); *Kooloian v. Suburban Land Co.*, 873 A.2d 95, 99 (R.I. 2005) (fraud claim requires proof that defendant "made a false representation intending thereby to induce plaintiff to rely thereon and that the plaintiff justifiably relied thereon to his or her damage.")

Rule 9(b) of the Federal Rules of Civil Procedure states: "In all averments of fraud and mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally." One purpose of the rule is to provide the defendant with information that is sufficiently particularized to enable him to understand the precise nature of the allegations and to prepare a response. *See Dowling v. Narragansett Capital Corp.*, 735 F. Supp. 1105, 1111 (D.R.I. 1990). What is indisputable is that Rule 9 does not exist in a vacuum; it must be read in light of the

notice pleading and liberality dictated by Rule 8 as well as the generous review of the allegations in a plaintiff's complaint required by Rule 12 (b)(6). *See Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 73 (1st Cir. 2000); *Zahn v. Yucaipa Capital Fund*, 218 B.R. 656 (D.R.I. 1998) (recognizing that a plaintiff is not required to prove its case in a complaint).

The judicial task is not to decide whether the plaintiff will ultimately prevail, but rather whether it is entitled to undertake discovery in furtherance of the pleaded claims. *Rodi v. Southern New England School of Law*, 389 F.3d 5, 13 (1st Cir. 2004) (reversing dismissal of fraudulent misrepresentation claims). The First Circuit has acknowledged in this regard that pre discovery motions to dismiss under Rule 9(b) may be construed less strictly than post discovery motions. *Shaw v. Digital Equipment Corp.*, 82 F. 3d 1194, 1225 (1996) ("[I]n determining the adequacy of a complaint under that rule, we cannot hold plaintiffs to a standard that would effectively require them, pre-discovery, to plead evidence.") (citations omitted); *In re Cabletron Systems, Inc.*, 311 F.3d 11, 33 (2002) ("[T]he difference in discovery is relevant to a court's evaluation of sufficient particularity.") (post discovery motion).

Since "the most basic consideration in determining the sufficiency of a fraud pleading is deemed to be the amount of detail necessary to give adequate notice to an adverse party so a responsive pleading can be prepared," dates covering a range, when combined with the information about the statements made, are sufficient notice to enable a defendant to respond. *City of Manchester v. National Gypsum Co.*, 637 F. Supp. 646, 655 (D.R.I. 1986). In the present case, the allegations in the Amended Complaint are plainly adequate to place Defendants on notice of the nature of the misrepresentations to the Plaintiff made with respect to the expiration of the stock options. Consequently, Rule 9(b) does not bar Plaintiff's fraud claims.

Furthermore, because the Plan documents provided to Plaintiff did not set forth a definitive termination date, and only provided a general expiration date, Plaintiff reasonably relied on the information provided on the USB web site in determining when he could exercise his stock options. Given the ambiguous plan terms, subject to the unilateral extension by GE, the web site did not conflict with the terms of the Plan. Moreover, since Defendants did not send Plaintiff periodic reports or provide updated documents regarding his stock options and their expiration dates, Plaintiff was necessarily compelled to rely on the account information provided through accessing the USB web site through the GE portal. Accordingly, it cannot be concluded at this juncture that Plaintiff's reliance was unreasonable as a matter of law.

In this regard, the cases cited by USB are readily distinguishable as they addressed motions to dismiss claims at the summary judgment stage or after discovery. *See Waksman v. Cohen*, 2002 WL 31466417 (S.D.N.Y. 2002); *Rudolf v. Turecek*, 658 N.Y.S. 2d 769 (App. Div. Dept. 1997) (granting motion for summary judgment); (dismissing misrepresentation claims at close of evidence at trial).

**IV. <u>As an Alternative to Dismissal, Plaintiff Moves to Amend his Complaint to Conform the Pleadings to Rule 9(b).</u>**

A Rule 12(b)(6) motion is not a proper vehicle for resolving this case on the merits at this stage of the litigation. In furtherance of the policy of the liberality in allowing amendments, should this Court determine the facts as plead in the Complaint do not conform to the standards of Rule 12(b)(6) or Rule 9(b), Plaintiff should be permitted the opportunity to file a second amended complaint. *Guilbeault v. R.J. Reynolds Tobacco Company*, 84 F. Supp.2d 263 (D.R.I. 2000); *In re GTech Holdings Corporation Securities Litigation*, 32 Fed.R.Serv. 3d 604 (D.R.I. 1995).

## CONCLUSION

For the reasons set forth herein and in his initial memorandum of law previously filed with this Court, Defendant USB Financial Services, Inc. and Defendant General Electric Company's Motions to Dismiss should be denied in all respects.

Plaintiff,
By his Attorneys,

/s/ William M. Kolb
William M. Kolb, #3664
Law Offices of William M. Kolb, LLC
One Ship Street
Providence, RI 02903
401-490-8297
401-490-8299 (fax)

## CERTIFICATION

I hereby certify that the foregoing *PLAINTIFF'S OBJECTION TO DEFENDANT USB FINANCIAL SERVICES, INC.'S MOTION TO DISMISS AMENDED COMPLAINT* was filed electronically with the United States District Court for the District of Rhode Island and is available for viewing and downloading from the Electronic Case Filing system. The following attorney received service by electronic means on this 6th day of September 2007:

David A. Wollin, Esq.
Adler Pollock & Sheehan, P.C.
One Citizens Plaza
Providence, RI 02903

Robert M. Duffy, Esq.
Rachelle R. Green, Esq.
Duffy, Sweeney & Scott, Ltd
One Turks Head Plaza
Providence, RI 02903

/s/ William M. Kolb