UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| David Roy<br>Plaintiff,<br><br>v.<br><br>General Electric Company,<br>UBS Financial Services, Inc.,<br>f/k/a UBS Paine Webber, Inc.,<br>Defendants. | C.A. No. 07-0107-S |

**DECISION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

This matter comes before the Court on the Motions to Dismiss filed by the General Electric Company ("GE") and UBS Financial Services, Inc. ("UBS") (collectively, "Defendants"), against the Amended Complaint filed by Plaintiff David Roy ("Plaintiff"). After consideration of the parties' submissions and the oral argument thereon, the Court grants Defendants' motions.

I. Factual Background

The following factual background is limited to that necessary for disposition of the pending motions. The Court takes the facts as set forth in Plaintiff's Amended Complaint, and from related materials that properly may be considered at the motion to dismiss stage. Plaintiff is a resident of the State of Rhode Island. GE is a corporation organized and existing under the laws of the State of New York and is registered as a foreign business with the Rhode

Island Secretary of State. UBS, formerly known as UBS Paine Webber, Inc., is a corporation organized and existing under the laws of the State of Delaware and is registered as a foreign business corporation with the Rhode Island Secretary of State.

Plaintiff was employed by GE from approximately September 5, 1977 to September 14, 2001. During the course of Plaintiff's employment, he was given GE stock options as part of a performance incentive plan. The plan was administered by UBS. By its own terms, the validity, construction, and effect of the incentive plan is governed by the substantive law of New York.

On or about September 14, 2001, Plaintiff was terminated from his employment at GE; however, a severance agreement extended his effective termination date to March 1, 2002. Under GE's stock option program, Plaintiff's stock options would expire one year after his date of termination. Consequently, Plaintiff's stock options expired on March 1, 2003.

Meanwhile, between September 14, 2001 and March 1, 2003, Plaintiff periodically reviewed his stock option account through a website maintained by UBS.[1] On each of these occasions, Plaintiff

---

[1] Plaintiff's allegation that, between September 14, 2001 and March 1, 2003, he "periodically" reviewed his stock option account via the UBS website, represents a significant departure from his original Complaint. In his original Complaint, Plaintiff claimed that: (1) he believed his options expired on March 14, 2003; (2) he accessed his options account through the UBS website on March 10, 2003, in order to exercise the options before they expired on what he believed was the correct expiration date of March 14, 2003; (3) the UBS website provided information to the effect that his options

was informed that his options did not expire until March 1, 2004 (as opposed to the expected expiration date of March 1, 2003). As a result of this information, Plaintiff elected to not exercise his options before March 1, 2003.

However, at some point, Plaintiff apparently arrived at the erroneous belief that his options would expire on March 14, 2003. So, on March 10, 2003, he accessed his account at UBS (presumably, in order to exercise the options before they expired). However, as before, the account information provided by UBS indicated that his options would not expire until March 1, 2004. Plaintiff printed a copy of the account information he was provided, and also called UBS and spoke with a UBS representative who confirmed that the

---

would not expire until March 1, 2004; and (4) as a result of the information provided by UBS, he did not exercise his options at that time (March 10, 2003). After GE and UBS filed motions to dismiss Plaintiff's original Complaint, pointing out that Plaintiff had incorrectly calculated his termination date and that the options expired according to their terms on March 1, 2003, i.e. more than a week before Plaintiff accessed the UBS website on March 10, 2003, Plaintiff filed his Amended Complaint. In his Amended Complaint, Plaintiff continues to concede that he mistakenly believed that his options expired on March 14, 2003, rather than on March 1, 2003, and furthermore that this belief compelled him to access the UBS website on March 10, 2003, in order to exercise his options. However, he now alleges that he checked his account on the UBS website <u>even</u> <u>before</u> March 1, 2003, and in each of those instances was informed that his options would not expire until March 1, 2004. Plaintiff does not give any reason why he continued to believe mistakenly that his options expired on March 14, 2003 even after he received contradictory information during his "periodic[]" visits to the UBS website. While the Court believes that Plaintiff's revision tests the bounds of credibility, it will otherwise leave the matter be since it is apparent that the Amended Complaint nonetheless fails as a matter of law.

website information was correct, i.e. that Plaintiff options would not expire until March 1, 2004. Based on this information, Plaintiff did not exercise his options at that time.

Later that year, in December 2003, Plaintiff unsuccessfully attempted to access his account at the UBS website. He telephoned UBS, at which time he was informed by a UBS representative that his account no longer existed. On February 16, 2004, Plaintiff sent a letter to William J. Conaty at GE to register his complaint about the apparent loss of his stock options. GE and UBS have refused to restore Plaintiff's stock options.

## II. Standard of Review

In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a court must determine whether the complaint states any claim upon which relief can be granted. In so doing, the court must construe the complaint in the light most favorable to the plaintiff, taking all well-pleaded factual allegations as true and giving the plaintiff the benefit of all reasonable inferences. Aybar v. Crispin-Reyes, 118 F.3d 10, 13 (1st Cir. 1997); Carreiro v. Rhodes Gill & Co., 68 F.3d 1443, 1446 (1st Cir. 1995).

In deciding a motion to dismiss, however, a court is not always limited to the facts alleged in the plaintiff's complaint. The First Circuit Court of Appeals has adopted a "practical, commonsense approach" for determining what materials may be

properly considered on a motion to dismiss. Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16 (1st Cir. 1998). Under this approach, a court may consider not only the complaint, but also the "facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice." Jorge v. Rumsfeld, 404 F.3d 556, 559 (1st Cir. 2005). In addition, when a "complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document (the authenticity of which is not challenged), that document effectively merges into the pleadings." Beddall, 137 F.3d at 17; see also Jorge, 404 F.3d at 559 ("Moreover, the district court appropriately may consider the whole of a document integral to or explicitly relied upon in a complaint, even if that document is not annexed to the complaint.").

Although Plaintiff's Amended Complaint attached no documents as exhibits, it specifically referred to two documents that were attached to the original Complaint: (1) a printout of the UBS website page indicating a stock option expiration date of March 1, 2004 (attached as Exhibit A); and (2) a copy of the letter sent by the Plaintiff to William J. Conaty at GE (attached as Exhibit B). Moreover, both GE and UBS attached as an exhibit to their respective Motions to Dismiss a copy of an excerpt from the "GE 1990 Long-Term Incentive Plan," which governed the issuance of Plaintiff's stock options (attached as Exhibit 1 to GE's Motion and

Exhibit A to UBS' Motion).

This Court may consider each of the exhibits attached to Plaintiff's original Complaint and GE's and UBS' Motions to Dismiss, the former because they are Plaintiff's own submissions, and the latter because their authenticity has not been questioned and they are "expressly linked to" the factual allegations set forth in Plaintiff's Amended Complaint. See Beddall, 137 F.3d at 17 (agreement properly before the court on a Rule 12(b)(6) motion where the agreement was not attached to the complaint, but the complaint discussed the agreement at length, the agreement's authenticity was not challenged, and the agreement was appended to the 12(b)(6) motion).

III. Discussion

As an initial matter, the Court must determine what law controls the disposition of Plaintiff's claims. Indicated earlier was the fact that the terms of the stock option plan provide that its validity, construction, and effect is governed by the substantive law of New York. The Court sees no reason to disturb this expectation of the parties, at least with respect to the purely contractual claims (Counts 1 and 2) asserted by Plaintiff. But even as to Plaintiff's tort claims (Counts 3 through 7), and apart from the language of the plan, the circumstances of the present dispute militate for the application of New York law.

Under the "interest weighing" approach applied in Rhode Island

to determine the law applicable to a given case, the Court must "look at the particular case facts and determine therefrom the rights and liabilities of the parties 'in accordance with the law of the state that bears the most significant relationship to the event and the parties.'" Najarian v. Nat'l Amusements, Inc., 768 A.2d 1253, 1255 (R.I. 2001) (quoting Cribb v. Augustyn, 696 A.2d 285, 288 (R.I. 1997)). Factors to be weighed in determining which law applies are "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law." Id. (quoting Pardey v. Boulevard Billiard Club, 518 A.2d 1349, 1351 (R.I. 1986) (citation omitted)). In applying these factors to tort cases, the Court must consider: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Id. (quoting Brown v. Church of the Holy Name of Jesus, 252 A.2d 176, 179 (R.I. 1969)).

Looking through the prism of these factors, it is evident that New York law is appropriately applied to this dispute. GE is a New York company, which issued to Plaintiff the stock option agreement expressly governed by New York law. While employed at GE,

Plaintiff never worked in Rhode Island and, while it may not be clear from which jurisdiction any alleged misconduct originated, there is no allegation that any originated in Rhode Island.[2] The UBS website, which was the vehicle through which Plaintiff received the information regarding his stock options, stated that "[a]ll awards shown are subject to the terms of the grants of such awards and of the Plan under which the grants were made." In other words, any information provided was accompanied by an explicit caution that the terms of the stock option plan -- a plan governed by New York law -- were paramount. In sum, the Court finds that all claims asserted by Plaintiff are properly governed by New York law.

A. Count One: Breach of Contract

Plaintiff claims that GE breached the stock option agreement by refusing to allow him to exercise his stock options on or before March 1, 2004. Plaintiff expressly alleges in his Amended Complaint, however, that his stock options expired on March 1, 2003, one year after the effective date of his termination, pursuant to the terms of GE's incentive plan.[3] Thus, Plaintiff's

---

[2] Plaintiff does not even allege that he was physically located in Rhode Island when he accessed his account through the UBS website. Even if Plaintiff had alleged this, however, it would not be sufficient to change the balance of the relevant factors.

[3] Plaintiff specifically alleged: "On information and belief, pursuant to GE's stock option program, [Plaintiff's] stock options expired on March 1, 2003." While Plaintiff's counsel attempted to clarify this as, at most, a retrospective admission, i.e. not an admission that Plaintiff knew <u>prior</u> to March 1, 2003 that his options expired on that day, <u>see</u> Hrg. Tr. 27:16-22, it is

failure to exercise his stock options before their expiration effectively negates his breach of contract claim. See, e.g., Onanuga v. Pfizer, Inc., 369 F. Supp. 2d 491, 496-97 (S.D.N.Y. 2005) (no breach of contract by employer where stock options lapsed according to their own terms); see also Reynolds v. Maples, 214 F.2d 395, 398 (5th Cir. 1954) (no contract formed until optionee "accepts the offer in the prescribed manner and before expiration thereof").

Although Plaintiff alleges that he "periodically . . . review[ed]" his stock option account via the UBS website prior to March 1, 2003, and was there informed that his options would not expire until March 1, 2004, the actual terms of the incentive plan cannot be undone or modified by an error on a website. The incentive plan explicitly provided that Plaintiff's options would expire one year after his termination,[4] and it is this document that controls. See Russo v. Banc of Am. Sec., LLC, No. 05 Civ. 2922, 2007 WL 1946541, *5 (S.D.N.Y. June 28, 2007) (concluding that, for several reasons, information provided by website did not modify prior stock option agreement); see also Jones v. Bank of Am., N.A., 311 F. Supp. 2d 828, 834-35 (D. Ariz. 2003) (optionee bound by terms of stock option agreement despite allegedly

---

nonetheless an admission that Plaintiff's stock options expired on March 1, 2003 pursuant to the terms of the stock option plan.

[4] Again, the Court relies on Plaintiff's express admission in his Amended Complaint.

contradictory assurances by superiors). In other words, Plaintiff had an obligation to know the terms of the plan, and to not rely on as gospel statements made on the website. While the fact that GE or UBS apparently posted misleading information is disturbing, it does not alter the contractual terms and obligations of the parties, which have been conceded by Plaintiff. This claim therefore must be dismissed.

B. Count Two: Breach of Good Faith and Fair Dealing

Plaintiff next claims that GE's alleged breach of contract encompasses a breach of an implied covenant of good faith and fair dealing. However, a claim for breach of the duty of good faith and fair dealing is precluded where the claim arises from the same factual allegations as a breach of contract claim. See Hall v. Earthlink Network, Inc., 396 F.3d 500, 508 (2d Cir. 2005) ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.") (quoting Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 272 Cal. Rptr. 387, 400 (Cal. Ct. App. 1990)); see also Tierney v. Omnicom Group Inc., No. 06 Civ. 14302, 2007 WL 2012412, *7 (S.D.N.Y. July 11, 2007). Given that Plaintiff's claim for breach of the duty of good faith and fair dealing essentially "incorporates by reference" the allegations in

the previous claim for breach of contract, it must be dismissed.

C. Count Three: Promissory and/or Equitable Estoppel

Plaintiff claims that GE and UBS should be held to account on theories of promissory estoppel or equitable estoppel because, he alleges, they misrepresented to him that his stock options would not expire until March 1, 2004. However, this claim fails at the threshold because "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 587 (2d Cir. 2006). The incentive plan is a valid written agreement, its existence is undisputed, and its scope clearly covers the dispute put forward by Plaintiff. Therefore, Plaintiff's quasi-contractual claims must be dismissed. Id.; see also Tierney, 2007 WL 2012412, at *8-9; Labajo v. Best Buy Stores, LP, 478 F. Supp. 2d 523, 530 (S.D.N.Y. 2007).

D. Counts Four and Five: Negligent Misrepresentation and Fraudulent Misrepresentation/Deceit

Plaintiff claims that UBS negligently or fraudulently misrepresented to him the expiration date of his stock options. These claims are precluded by the economic loss doctrine, which is well-accepted under New York law. That doctrine, which is "only one of the dikes that New York courts have erected in their inevitable attempt to keep contract law 'from drown[ing] in a sea of tort,'" Carmania Corp., N.V. v. Hambrecht Terrell Int'l, 705 F.

Supp. 936, 938 (S.D.N.Y. 1989) (citation omitted), restricts plaintiffs who have suffered only economic loss to an action for the benefit of their bargains. Id. In other words, "[i]f the damages suffered are of the type remediable in contract, a plaintiff may not recover in tort." Id.; see also Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A., 244 F.R.D. 204, 220 (S.D.N.Y. 2007); Labajo, 478 F. Supp. 2d at 531-32. Consequently, Plaintiff's claims for negligent and fraudulent misrepresentation must be dismissed.[5]

E. Count Six: Negligence

Plaintiff claims that GE and UBS breached a duty of care owed to him by negligently providing inaccurate and unreliable information regarding the expiration of his stock options. However, according to his own allegations, Plaintiff cannot be said to have reasonably relied on any allegedly negligent misrepresentations by GE or UBS, and demonstration of reasonable reliance is a prerequisite to establishing the causation inherent to negligence. See, e.g., JP Morgan Chase Bank v. Winnick, 350 F. Supp. 2d 393, 405 (S.D.N.Y. 2004) ("[W]here a plaintiff actually knew at the time a representation was made that it was false, she

[5] Although Defendants argue that Plaintiff's claims for negligent and fraudulent misrepresentation fail for additional reasons, e.g. noncompliance with Fed. R. Civ. P. 9(b) (requiring that fraud be plead with particularity), the Court sees no need to go further than it already has, since the claims may be dismissed for the reasons stated above.

cannot claim to have relied on the truth of that representation, and any injury she suffers is therefore not attributable to the defendant."). As alleged in the Amended Complaint, Plaintiff knew that his termination date was March 1, 2002. He knew that the terms of the incentive plan required him to exercise his stock options within one year of his termination. "[W]here the alleged misrepresentations conflict with the terms of a written agreement, there can be no reasonable reliance as a matter of law." Ruffino v. Neiman, 794 N.Y.S.2d 228, 229 (N.Y. App. Div. 2005). Furthermore, the copy of the UBS webpage submitted as Exhibit A to Plaintiff's original Complaint clearly provides that it should not be construed as superseding the written terms of the incentive plan. For example, the webpage states that "[a]ll awards shown are subject to the terms of the grants of such awards and of the Plan under which the grants were made. Termination of employment will affect . . . the expiration of your options." Moreover, the webpage states that "GE reserves the right to make corrections to this data." In light of these disclaimers, Plaintiff's knowledge of the terms of his incentive plan, and Plaintiff's belated attempt to reconcile his knowledge with his mistaken belief as to the stock option expiration date, there can be no reasonable reliance, as a matter of law. Although Plaintiff has argued that he did not know until after March 1, 2003 that his options were set to expire on that day, his ignorance could not modify the terms of the stock

option plan or burden GE or UBS with a greater responsibility to provide accurate information. Where a plaintiff "has the means to discover the true nature of the transaction by the exercise of ordinary intelligence and fails to make use of those means, he cannot claim justifiable reliance on defendant's misrepresentations." Waksman v. Cohen, No. 00 Civ. 9005, 2002 WL 31466417, *6 (S.D.N.Y. Nov. 4, 2002) (citation omitted). Plaintiff's claim for negligence must be dismissed.[6]

F. Count Seven: Unjust Enrichment

Lastly, Plaintiff claims that GE has been unjustly enriched by its refusal to allow him to exercise his stock options. Unjust enrichment, like promissory and equitable estoppel, "is grounded in quasi contract and, [w]here a valid and enforceable contract exists governing a particular subject matter, it precludes recovery in quasi contract for events arising out of the same subject matter." Corcoran v. GATX Corp., 852 N.Y.S.2d 913, 914 (N.Y. App. Div. 2008) (quoting LaBarte v. Seneca Res. Corp., 728 N.Y.S.2d 618, 621 (N.Y. App. Div. 2001)). As explained earlier, the incentive plan is a valid written agreement, its existence is undisputed, and its scope clearly covers the dispute put forward by Plaintiff. Therefore,

---

[6] The lack of reasonable reliance also has implications for Plaintiff's claims for promissory estoppel and negligent misrepresentation, given that each cause of action would require Plaintiff to prove that he reasonably relied on statements made by either GE or UBS. See Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000) (promissory estoppel); J.A.O. Acquisition Corp. v. Stavitsky, 863 N.E.2d 585, 587 (N.Y. 2007) (negligent misrepresentation).

Plaintiff's quasi-contractual claims, including unjust enrichment, must be dismissed. Id.; see also Tierney, 2007 WL 2012412, at *8-9; Labajo, 478 F. Supp. 2d at 530.

IV. Conclusion

For the foregoing reasons, Plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

WESmith

William E. Smith
United States District Judge
Date: 4/14/08